Debra **ACKERMAN**, Plaintiff–Appellant,

v.

**WESTERN ELECTRIC COMPANY, INC., a corporation, Defendant–Appellee.**

Debra **ACKERMAN**, Plaintiff–Appellee,

v.

**WESTERN ELECTRIC COMPANY, INC., a corporation, Defendant–Appellant.**

Nos. 86–2721, 86–2769, 87–1533, 86–2768 and 86–15079.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 17, 1987.

Decided Nov. 8, 1988.

Madeleine Tress, Law Offices of Madeleine Tress, San Francisco, Cal., Guy T. Saperstein, Mari Mayeda, Farnsworth, Saperstein & Seligman, Oakland, Cal., for plaintiff-appellant-cross-appellee.

Michael H. Salinsky, Kevin M. Fong, William G. Alberti, Sabrina A. McCarthy, San Francisco, Cal., for defendant-appellee-cross-appellant.

Joan M. Graff, Robert Barnes, John M. True, The Employment Law Center of Legal Aid Soc. of San Francisco, San Francisco, Cal., for amicus curiae.

Before TANG, CANBY and BRUNETTI, Circuit Judges.

CANBY, Circuit Judge:

## INTRODUCTION

Plaintiff Debra L. Ackerman appeals from a judgment entered in her favor on a claim of handicap discrimination, under the California Fair Employment and Housing Act ("the Act" or "FEHA"). Cal.Gov.Code § 12940. She raises various issues relating to the award of attorneys' fees, the denial of punitive damages, and the denial of prejudgment interest.[1] Defendant Western Electric Company Inc., now AT & T Technologies Inc., ("the Company"), cross-appeals the summary judgment for plaintiff and the denial of summary judgment in its favor. In addition to its arguments on the state of the evidence, the Company claims that Ackerman's state law claim is preempted by federal labor law.

Ackerman filed the action in state court and the Company removed it to federal court. The parties waived jury trial. Following lengthy proceedings and extensive briefing, the district court dismissed all claims against the Company except the one for handicap discrimination under California law. The court granted summary judgment for plaintiff on that claim. We affirm the judgment of the district court, 643 F.Supp. 836, in all respects.

## DISCUSSION

The Company installs, modifies and removes office telecommunications equipment. Debra Ackerman was hired by the Company as an installer in May 1978. In June 1981, she contracted a bronchial infection, which aggravated her preexisting asthmatic condition, and she went on disability leave. On April 9, 1982, the Company advised her that it had learned that she was unable to return to work and that she would therefore be discharged upon expiration of her disability benefits. On April 12, Ackerman returned to work with a note from her treating physician releasing her for work with the restriction "to stay away from dust, heavy exercise." A Company physician saw her and returned her to work with similar restrictions. On April 13, Ackerman and her union steward met with her supervisor, who advised them that the Company would not put her back to work as an installer, apparently because the Company Benefits Committee had determined that she was unable to return to sustained industrial work as a result of her asthma. She continued to receive disability benefits until June 15, 1982, at which time she was terminated for disability.

---

1. Ackerman also challenges the ruling that any claims under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1947), are time-barred. She presents this issue only as a precaution in the event that we find preemption. In light of our disposition of the pre-emption issue, we need not reach the statute of limitations question.

*Preemption*

■ The Company first raised the preemption issue in a motion to stay entry of summary judgment. Ordinarily, an issue raised so late in the proceedings would be waived for purposes of appeal, but the rule of waiver is a discretionary one. *See Singleton v. Wulff,* 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976). The issue has been thoroughly briefed and argued here, and Ackerman has not objected to our consideration of it. Because the issue is one of law and there is no deficiency in the record relating to it, we exercise our discretion to entertain the question. *See In re Howell,* 731 F.2d 624, 627 (9th Cir.), *cert. denied,* 469 U.S. 933, 105 S.Ct. 330, 83 L.Ed.2d 266 (1984).

■ The Company argues that Ackerman's state-law claim is preempted by section 301 of the Labor Management Relations Act. 29 U.S.C. § 185(a)(1947). The union's contract with the Company has a general clause which broadly prohibits discrimination on the basis of race, color, religion, sex, age, ... or because of handicap. This general prohibition, the Company argues, means that Ackerman's state law claim, is "inextricably intertwined" with the grievance and arbitration procedure of the collective bargaining agreement and so should have been dismissed as preempted. We disagree.

The Supreme Court recently stated that "the mere fact that a broad contractual protection against discriminatory ... discharge may provide a remedy for conduct that coincidentally violates state law does not make the existence or the contours of the state law violation dependent upon the terms of the private contract." *Lingle v. Norge Division of Magic Chef, Inc.,* —— U.S. ——, 108 S.Ct. 1877, 1885, 100 L.Ed.2d 410 (1988). If the state law claim can be resolved without interpreting the agreement, the claim is independent of the agreement for § 301 pre-emption purposes.

*Id.* 108 S.Ct. at 1884–85. Thus in *Lingle,* a state law claim for "retaliatory discharge" was held not to be preempted even though the same set of facts led to arbitration under the collective bargaining agreement. *Id.* at 1885. Of critical importance in *Lingle* was the fact that the state law factual inquiry did not turn on the meaning of any provision of the collective bargaining agreement. Pursuit of the state law claim consequently did not undermine the goal of uniform federal standards for federal labor-law adjudications.

*Lingle* controls this case. California's statute confers upon employees [2] certain rights not to be discriminated against because of physical handicap or medical condition. Cal.Gov.Code § 12940. That right is defined and enforced under state law without reference to the terms of any collective bargaining agreement. Ackerman's state-law claim is consequently independent of the agreement. That she might also have separate remedies under the bargaining agreement makes no difference.

> [E]ven if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agreement for § 301 pre-emption purposes.

*Lingle,* 108 S.Ct. at 1883 (footnote omitted). *See Caterpillar Inc. v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 2431, 96 L.Ed.2d 318 (1987) (complaint for wrongful discharge that does not require interpretation of collective bargaining agreement not preempted by § 301).

Thus, we have recently held that a claim brought under Oregon's handicap discrimination law is not preempted by § 301 because it does not require interpretation of a collective bargaining agreement. *Miller v. AT & T Network Systems,* 850 F.2d 543 (9th Cir.1988). The Oregon statute in-

---

**2.** The California statute confers a right that is nonnegotiable and applies to unionized and nonunionized workers alike. *Lingle* made it clear, however, that these characteristics are not a guarantee against preemption. The proper test is still whether resolution of the state law claim requires interpretation of the collective bargaining agreement. *Lingle,* 108 S.Ct. at 1882 n. 7.

volved in that case, Ore.Rev.Stat. § 659.425, is indistinguishable in all relevant respects from the California statute upon which Ackerman relies. In light of *Miller* as well as *Lingle*, then, it is clear that Ackerman's claim is not preempted.

*Denial of Summary Judgment for the Company*

The Company contends that the district court erred in denying its motion for summary judgment in September 1985. The Company points out that the district court stated that Ackerman had not established an essential part of her prima facie case— that she could, with reasonable accommodation if necessary, perform the "essential functions" of the installer's job. The court stated that there had been no sufficient showing as to which of the functions of an installer's job were the *essential* ones, and that there had similarly been an inadequate showing as to what accommodation might be required. The Company argues that Ackerman bore the burden of proof on these issues, and that the district court accordingly should have rendered judgment for the Company under the rule of *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). *Celotex* held that Rule 56(c) requires the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2553.

 In holding that Ackerman was required to show that she could perform the essential functions of the installer's job, however, the district court relied on California regulations then in effect. They provided that a prima facie case of handicap discrimination was established by plaintiff's showing that she was a "qualified handicapped individual" who had been denied her position because of her handicap. Cal.Admin.Code Title 2, § 7293.7. A "qualified handicapped individual" was defined as a handicapped individual "who, with reasonable accommodation, can perform the essential functions of the job." *Id.* at 7293.6(j).

These regulations did appear to place upon Ackerman the burden of showing that she could, with reasonable accommodation, perform the essential functions of the installer's job. That burden, however, seemed to be inconsistent with the provision of the statute, which first prohibits discrimination because of handicap and then lists what have been treated as affirmative defenses: that an "employee, because of his or her physical handicap, is unable to perform his or her duties, or cannot perform those duties in a manner which would not endanger his or her health and safety or the health and safety of others." Cal.Gov.Code § 12940(a)(1); *see DFEH v. City of Anaheim Police Dept.*, (1982), FEHC Dec. No. 82–08, at 6 (inability to perform job is affirmative defense).

To clear up this ambiguity, the California Fair Employment and Housing Commission amended its regulations on October 15, 1987, and deleted the requirement that a plaintiff show as part of her prima facie case that she was a "qualified handicapped person." The only requirement remaining was that plaintiff show that she was handicapped and had been denied an employment benefit because of it. Cal.Admin.Code tit. 2, § 7293.7, as amended Oct. 15, 1987. In explaining its reasons for the change, the Commission made it clear that it was simply acting to correct what it regarded as a misreading of its prior regulations.

> The Commission has become increasingly concerned that these provisions could be read, incorrectly, to mean that it is the burden of the ... plaintiff to demonstrate by a preponderance of the evidence not only that an individual has been adversely treated because he or she is handicapped, but also that the handicap would not have rendered the individual unable to perform the job in question. The respondent or defendant would not, under this incorrect reading, be required to assert this inability to perform the job as an affirmative defense and prove it by a preponderance of the evidence. This incorrect reading of the regulations had begun to appear with increasing frequen-

cy. (E.g., *Ackerman v. Western Electric Co.* (N.D.Cal. Aug. 29, 1986)).

FEHC, Final Statement of Reasons for Changes to Physical Handicap Regulations, 2 (1987). The reference to "qualified handicapped individual" was accordingly deleted "to remove any ambiguity on this issue from the regulations and to conform them to the FEH Act." *Id.*

We accept the view of the Commission that it was an incorrect reading of their regulation to require Ackerman to show ability to perform the job as part of her prima facie case, or as an issue upon which she bore the burden of proof.[3] Because the burden of proof of that issue should properly have been placed upon the Company, it was clearly not error for the district court to decline to grant summary judgment for the Company when it found an insufficient showing as to what functions of the installer's job were "essential." Nor do we find an abuse of discretion in the district court's decision to require further submissions from the Company on that issue.

### Summary Judgment for Ackerman

■ The Company contends that, even if the district court was not required to render summary judgment for the Company, it erred in granting one for Ackerman. The Company contends that it was improperly subjected to a trial by affidavit. We do not so read the record.

There has never been any dispute about the facts that Ackerman suffers from asthma and that she was denied her job as an installer because of her condition. The Company contends, however, that there were material issues of fact to be resolved concerning whether Ackerman could, with reasonable accommodation, perform the essential duties of an installer, and whether she could do so without endangering her safety.

The district court reviewed a great deal of uncontradicted evidence regarding the tasks of an installer. He also reviewed detailed and uncontradicted records of Ackerman's own work as an installer. It was conceded that some dust attended most work of an installer, but that heavy dust and exertion primarily occurred in ironwork and cabling, which had amounted to only 11% of Ackerman's work during the period she was an Index 2[4] installer. After reviewing evidence of the nature of crew arrangements and work assignments, the district court concluded that, while ironwork and cabling were essential functions of Index 2 installers as a group, they were not essential to any particular individual's performance of an installer's job. In light of the nature of Ackerman's past work, the district court concluded that such work was not an essential part of her job.

The district court also ruled that, even if ironwork and cabling were essential parts of Ackerman's job, she could perform them with reasonable accommodation. That accommodation included the wearing of a paper mask by Ackerman, as well as minor reassignment of her duties to preclude pulling or lifting more than 25 pounds and to preclude "tearouts" (demolition of existing ironwork).

Finally, the district court concluded that Ackerman could perform her job without threatening her safety. As the district court recognized, the safety defense has been given narrow scope; the employer must offer more than mere conclusions to present such a defense. *See Sterling Transit Co. v. Fair Employment Practice Comm'n,* 121 Cal.App.3d 791, 175 Cal.Rptr. 548 (1981) (conjecture of possibility of harm does not overcome strong policy of providing equal employment opportunity). The district court's determination was based on the medical evidence of the Company's physician as well as Ackerman's; both physi-

---

**3.** The Commission clearly regarded its amendment as a clarification and not a change in the substance of the regulations. In any event, we normally apply the law as it exists at the time our decision on appeal. *E.g., Idaho v. Howmet Turbine Component Co.,* 814 F.2d 1376, 1378 (9th Cir.1987) (citing *Bradley v. School Board of*

*Richmond,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974).

**4.** The Company classified installers in five groups, or "Indexes." Beginning level was Index 1; Ackerman had reached Index 2.

cians released her to work with a similar restriction based on the same medical records. The Company's showing that Ackerman would be subject to harm was properly rejected as speculative.

We conclude that the district court was correct in ruling that the Company had failed to present triable issues of fact on the questions whether, with reasonable accommodation, Ackerman could perform work as an installer, and whether she could do so without endangering her health. Reasonable accommodation includes:

> Job restructuring, reassignment or transfer, part-time or modified work schedules, acquisition or modification of equipment or devices, the provision of readers or interpreters, and other similar actions.

Cal.Admin.Code Title 2, § 7294(a)(2) (Oct. 15, 1987) (amending § 7293.9(a)(2) containing identical language). The Company's offerings that no such accommodation was available or would work can properly be characterized as speculative. "A party opposing summary judgment is entitled to the benefit of only *reasonable* inferences that may be drawn from the evidence put forth." *Barnes v. Arden Mayfair, Inc.*, 759 F.2d 676, 680 (9th Cir.1985). The record certainly does not indicate that the Company tried any of these means of accommodation with Ackerman. We affirm the district court's summary judgment that the Company is liable to Ackerman for handicap discrimination.

*Attorneys' Fees*

Ackerman appeals the district court's award of attorneys' fees to Ackerman under Cal.Gov.Code § 12965(b). That statute provides:

> In actions brought under this section, the court, in its discretion may award to the prevailing party reasonable attorney fees and costs.

Ackerman contends that the district court erred in reducing her principal attorney's fee request from 1,611 hours at $125 per hour to 338 hours at $95 per hour, and her associate attorney's request from 218 hours at $75 per hour to 60 hours at $75 per hour. We disagree.

Ackerman's complaint set forth nine claims, ranging from breach of the covenant of good faith and fair dealing, misrepresentation, violation of ERISA, and violation of the California Fair Employment and Housing Act, to claims against her union for breach of the duty of fair representation. She prevailed only on the California statutory claim. Clearly, all of the claims were not "related" within the meaning of *Hensley v. Eckerhart*, 461 U.S. 424, 434–35, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983) [5]; it was therefore appropriate for the district court to disallow hours spent on unrelated claims on which Ackerman did not prevail. *See Reynolds Metals Co. v. Alperson*, 25 Cal.3d 124, 129–30, 158 Cal. Rptr. 1, 3–4, 599 P.2d 83, 85–86 (1979). Moreover, in the case of Ackerman's principal attorney, the time records were wholly deficient; the trial judge was entitled to reduce the award accordingly. *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939.

Similarly, in reducing the hourly rate claimed for Ackerman's principal attorney, the trial judge was entitled to take account of fees customarily charged by that attorney and others in the community for similar work. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir.1975), *cert. denied*, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976). In arriving at the hourly rate, as in all other aspects of his fee determination, the trial judge fully explained and supported his ruling. We find no abuse of discretion in the fee award.

*Punitive Damages: Prejudgment Interest*

Ackerman contends that she should have been awarded punitive damages because her discharge was made with "conscious disregard" of her rights. In making its award the court does not appear to have

---

**5.** The district court, after pointing out that the law was uncertain as to whether the calculation of the fee is governed by state or federal law, concluded that there was no significant difference between state and federal law as applied to this case. We agree. *See, e.g., Serrano v. Priest*, 20 Cal.3d 25, 48–49, 141 Cal.Rptr. 315, 327–28, 569 P.2d 1303, 1315–16 (1977); *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939.

overlooked material facts. The court found that the Company's conduct was not deliberate or malicious. While the Company's actions were "unfounded, misguided and extremely ill-advised," that fact was "not a sufficient basis for imposing punitive damages." We find no error in the district court's ruling. *See Millar v. James*, 254 Cal.App.2d 530, 533, 62 Cal. Rptr. 335, 337 (1967).

█ The same rationale warrants affirmance of the court's decision not to award prejudgment interest. Such an award is discretionary and Ackerman advances no strong reasons for overturning the court's judgment. *See Greater Westchester Home–Owners Ass'n v. City of Los Angeles*, 26 Cal.3d 86, 102, 160 Cal.Rptr. 733, 740, 603 P.2d 1329, 1336 (1979), *cert. denied*, 449 U.S. 820, 101 S.Ct. 77, 66 L.Ed. 2d 22 (1980).

### CONCLUSION

Ackerman's handicap discrimination claim under the California Fair Employment and Housing Act is not preempted by section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a). Resolution of that state law claim does not require an interpretation of the collective bargaining agreement.

Summary judgment for Ackerman was appropriate; there were no genuine issues of material fact in dispute. Ackerman established the elements of her claim and the Company failed to come forth with specific evidence that, with reasonable accommodation to her disability, she could not perform the essential functions of her job.

The district court did not abuse its discretion in awarding Ackerman attorneys' fees in an amount substantially below that requested. It did not err in declining to award punitive damages or prejudgment interest.

AFFIRMED.