**Arland O. BROWN, Plaintiff,**

v.

**HOLIDAY STATIONSTORES, INC., d/b/a Fairway Foods, Defendant.**

**Civ. No. 4–89–603.**

United States District Court, D. Minnesota, Fourth Division.

Oct. 18, 1989.

Randall J. Fuller, Babcock, Locher, Neilson & Mannella, Anoka, Minn., for plaintiff.

Mark B. Rotenberg, Verdell F. Borth and Karen A. Fairbairn, Dorsey & Whitney, Minneapolis, Minn., for defendant.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court on plaintiff's motion to remand to Hennepin County District Court. The motion will be granted.

FACTS

On May 13, 1963 plaintiff Arland O. Brown, a Minnesota resident, was hired as a driver for defendant Holiday Station Stores, Inc., a Minnesota corporation doing business as Fairway Foods (Fairway). In 1980 plaintiff was suspended from over-the-road truck driving duties when it was

determined that he suffered from diabetes requiring insulin for control. Since 1981 plaintiff has performed yard and dock functions.

In August 1983 plaintiff suffered a severe insulin shock reaction, becoming physically violent and difficult to control. After this incident plaintiff returned to work. In January 1984 plaintiff had another reaction while operating a tractor in the yard area, causing some property damage. In March 1986 plaintiff was found wandering aimlessly and out of control during working hours. In September 1988 plaintiff experienced another insulin reaction at work which rendered him incapable of performing his duties. Finally, on November 11, 1988 plaintiff suffered a serious insulin reaction and as a result drove a tractor into a parked trailer, causing property damage.

Plaintiff received his first warning from Fairway following the March 1986 incident that he would be removed from service if he had another insulin reaction which left him without self control. In September 1988 plaintiff was again warned that his job was in jeopardy in a meeting involving plaintiff, Fairway officials, and a steward from plaintiff's union, General Drivers, Helpers and Truck Terminal Employees Union Local No. 120 (Local 120), which was the exclusive bargaining agent for plaintiff. Finally, on November 16, 1988 plaintiff signed a statement resigning his position with Fairway Foods effective June 30, 1989. Plaintiff signed the statement following negotiations between plaintiff's union representatives and company officials. In exchange for his resignation, plaintiff received health, welfare and pension fund benefits for approximately six months, benefits for which the company claims he would not otherwise be eligible.

On June 19, 1989, plaintiff brought suit in Hennepin County District Court claiming that Fairway discriminated against him on the basis of a handicap and failed to provide "reasonable accommodation" for him, in violation of the Minnesota Human Rights Act (MHRA), Minn.Stat. Ch. 363. On July 14, 1989 defendant removed the case to federal court on the grounds that plaintiff's state law claims are preempted under federal labor and motor carrier safety laws. Plaintiff then moved to remand the action on the grounds that the only cause of action asserted by plaintiff arises under Minnesota state law, and that the Court therefore lacks subject matter jurisdiction.

## DISCUSSION

A case may be removed from a state court without regard to the citizenship of the parties if it is an action over which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States. 28 U.S.C. § 1441(b). The presence or absence of federal question jurisdiction is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly-pleaded complaint. *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). The fact that plaintiff's complaint does not allege any claims pursuant to any federal law, however, does not necessarily preclude removal, if the claim falls in an area of state law which has been "completely preempted." *Avco Corp. v. Aero Lodge No. 735, I.A.M.,* 390 U.S. 557, 558, 88 S.Ct. 1235, 1236, 20 L.Ed.2d 126 (1968); *DeFord v. Soo Line Railroad Co.,* 867 F.2d 1080 (8th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 3265, 106 L.Ed.2d 610 (1989).

### I. *Section 301 Preemption*

In this case, defendant argues that plaintiff's claims pursuant to the MHRA are preempted by section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a) which provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter or between any such labor organizations may be brought in any district court of the United States having jurisdiction of parties without respect to the

amount in controversy or without regard to the citizenship of the parties.

In a series of cases, the Supreme Court has interpreted section 301 of the LMRA not only to provide federal court jurisdiction over controversies involving contract disputes, but also to preempt any state law claim arising from breach of a collective bargaining agreement. In *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), the Court held that LMRA section 301 "authorizes federal courts to fashion a body of federal law for the enforcement of these collective bargaining agreements...." *Id.* 353 U.S. at 451, 77 S.Ct. at 915. The purpose of preempting state-law claims requiring interpretation of collective bargaining agreements is that all claims raising issues of labor contract interpretation should be decided according to federal labor law in order to prevent inconsistent interpretations under state and federal law. According to the Court in *Local 174, Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962):

> The possibility that individual contract terms might have different meanings under state and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements. Because neither party could be certain of the rights which it had obtained or conceded, the process of negotiating an agreement would be made immeasurably more difficult by the necessity of trying to formulate contract provisions in such a way as to contain the same meaning under two or more systems of law which might some day be invoked in enforcing the contract....
>
> The importance of the area which would be affected by separate systems of substantive law makes the need for single body of federal law particularly compelling. The ordering and adjusting of competing interests through a process of free and voluntary collective bargaining is the keystone of the federal scheme to promote industrial peace. State law which frustrates the effort of Congress

to stimulate the smooth functioning of that process thus strikes at the very core of federal labor policy.... We cannot but conclude that in enacting section 301 Congress intended doctrines of federal labor law uniformly to prevail over inconsistent local rules.

*Lucas Flour*, 369 U.S. at 103–104, 82 S.Ct. at 576–77.

Defendant claims that plaintiff's complaint raises issues under the collective bargaining agreement reached between defendant and plaintiff's union Local 120 and hence is preempted by section 301. The complaint is based on Minn.Stat. § 363.03, subd. 1(6), which provides that it shall be an unfair employment practice:

> for an employer with 50 or more permanent full-time employees, an employment agency or a labor organization not to make reasonable accommodation to the known disability of a qualified disabled person or job applicant unless the employer, agency, or organization can demonstrate that the accommodation would impose an undue hardship on the business, agency or organization. "Reasonable accommodation" means steps which must be taken to accommodate the known physical or mental limitations of a qualified disabled person. Reasonable accommodation may include, but is not limited to: (a) making facilities readily accessible to and usable by disabled persons; and (b) job restructuring, modified work schedules that do not reduce the total number of hours normally worked, acquisition or modification of equipment or devices, and the provision of aids on a temporary or periodic basis.

Factors to be included in determining whether an accommodation would impose an undue hardship on the business are:

> (a) the overall size of the business or organization with respect to number of employees or members and the number and type of facilities;
>
> (b) the type of the operation, including the composition and structure of the work force, and the number of employees at the location where the employment would occur;

(c) the nature and cost of the needed accommodations;

(d) the reasonable ability to finance the accommodation at each site of business; and

(e) documented good faith efforts to explore less restrictive or less expensive alternatives, including consultation with the disabled person or with knowledgeable disabled persons or organizations.

*Id.* Because of the substantial similarities in the language and purposes of the two statutes, in construing the MHRA the Minnesota Supreme Court has applied principles developed in the adjudication of claims arising under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e et seq. In particular, the Minnesota Supreme Court has held that claims under the MHRA must follow the analysis announced by the United States Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Hubbard v. United Press Int'l, Inc.,* 330 N.W.2d 428, 440–42 (Minn.1983). Under *McDonnell Douglas,* plaintiff must establish a prima facie case by showing:

(1) he is a member of a protected class; (2) he was qualified for the job from which he was discharged; (3) he was discharged; and (4) the employer assigned a nonmember of the protected class to do the same work.

*Hubbard,* 330 N.W.2d at 441–42. The employer is then required to answer by articulating "some legitimate nondiscriminatory reason for the employment action." *Id.* at 441–42 n. 12. The plaintiff must then prove that defendant's proffered reason was a pretext, and that the discrimination was intentional. *Id.*

Defendant argues that adjudicating plaintiff's claim necessarily implicates the collective bargaining process because plaintiff failed to grieve his alleged discharge as was available under terms of the collective bargaining agreement, and because the "reasonable accommodation" which plaintiff will claim that Fairway was required to make pursuant to the MHRA necessarily implicated job classifications, seniority rules, and bump procedures collectively bargained with Local 120. Defendant further argues that it will claim as an affirmative defense that plaintiff voluntarily resigned from his position, and that the resignation was negotiated for plaintiff by Local 120. According to defendant, since the outcome of plaintiff's case will depend upon construction of agreements negotiated by plaintiff's union, the claim must be preempted by section 301 of the LMRA.

In two recent cases the United States Supreme Court has delineated the contours of section 301 preemption. In *Allis–Chalmers v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), the Court considered whether a state law cause of action for bad faith handling of a claim for disability benefits was preempted. The Court noted that it had previously held in *Lucas Flour* that a case alleging violation of a provision of a labor contract must be resolved by reference to federal law, and that a state rule "that purports to define the meaning or scope of a term in a contract suit therefor is preempted by federal labor law." *Id.* 471 U.S. at 210, 105 S.Ct. at 1910. In *Lueck,* the Court extended preemptive effect of section 301 "beyond suits alleging contract violations." *Id.* "Any other result," according to the Court, "would elevate form over substance and allow parties to evade the requirements of section 301 by relabeling their contract claims as claims for tortious breach of contract." *Id.* at 211, 105 S.Ct. at 1911. The Court found that in a claim for tortious breach of contract, "the right asserted not only derives from the contract, but is defined by the contractual obligation of good faith." *Id.* at 218, 105 S.Ct. at 1914. Any attempt to assess liability for a bad faith claim, therefore, inevitably involves contract interpretation, and therefore implicates the concerns articulated in *Lucas Flour* that collective bargaining agreements be determined solely by reference to federal law. The Court further noted that permitting plaintiff's claim to proceed in state court as a claim for tortious breach of contract would undermine the arbitration system as set forth in the collective bargaining agreement. Arbitration, according to the Court, occupies a "central role ... in

our system of industrial self-government." *Id.* at 219, 105 S.Ct. at 1915, *quoting Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960). According to the Court:

> Perhaps the most harmful aspect of the Wisconsin decision is that it would allow essentially the same suit to be brought directly in state court without first exhausting the grievance procedures established in the bargaining agreement. The need to preserve the effectiveness of arbitration was one of the central reasons that underlay the Court's holding in *Lucas Flour.*

*Id.* The Court went on to underscore its concern that unless preempted, claims involving

> vacation or overtime pay, work assignment, unfair discharge—in short, the whole range of disputes traditionally resolved through arbitration—could be brought in the first instance in state court by a complaint in tort rather than in contract. A rule that permitted an individual to sidestep available grievance procedures would cause arbitration to lose most of its effectiveness, as well as eviscerate a central tenet of federal labor contract law under section 301 that it is the arbitrator, not the court, who has the responsibility to interpret the labor contract in the first instance.

*Id.* 471 U.S. at 219–20, 105 S.Ct. at 1915–16.

*Lueck* is a stark reminder by the Court that state suits impinging upon the process of arbitrating disputes arising under collective bargaining agreements undermine important national labor policies and are preempted by section 301. The case also stresses, however, that not every dispute concerning employment, or "tangentially involving a provision of a collective bargaining agreement," is preempted by section 301 or other provisions of the federal labor law. *Id.* at 211, 105 S.Ct. at 1911. According to the Court, nothing in section 301 evidences an intent by Congress to entirely displace state labor regulation:

> Such a rule of law would delegate to unions and unionized employers the power to exempt themselves from whatever

state labor standards they disfavored. Clearly section 301 does not grant the parties to a collective bargaining agreement the ability to contract for what is illegal under state law. *In extending the preemptive effect of section 301 beyond suits for breach of contract, it would be inconsistent with congressional intent under that section to preempt state rules that proscribe conduct or establish rights and obligations, independent of a labor contract.*

*Id.* at 212, 105 S.Ct. at 1912 (emphasis added).

The Supreme Court has noted that Congress did not intend to entirely displace state regulation in the area of employee rights:

> We cannot declare preempted all local regulation that touches or concerns in any way the complex interrelationship between employees, employers and unions; obviously, much of this is left to the states.

*Motor Coach Employees v. Lockridge*, 403 U.S. 274, 289, 91 S.Ct. 1909, 1919, 29 L.Ed.2d 473 (1971), *see also, Lueck*, 471 U.S. at 207 n. 4, 105 S.Ct. at 1909 n. 4.

In its most recent decision on this question, *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), the Court held that a unionized employee's state law action based on Illinois' tort of retaliatory discharge for filing a workers compensation claim was not preempted by section 301. In analyzing whether preemption was appropriate, the Court considered the elements of retaliatory discharge under Illinois law:

> To show retaliatory discharge, the plaintiff must set forth sufficient facts from which it can be inferred that (1) he was discharged or threatened with discharge and (2) the employer's motive in discharging or threatening to discharge him was to deter him from exercising his rights under the act or to interfere with his exercise of those rights.

*Id.* 108 S.Ct. at 1882 (citations omitted). Defendant argued that the collective bargaining agreement between the parties

contained a provision precluding discharge except for "just cause" and that if the retaliatory discharge action went forward, the state court would be deciding the same issue as would an arbitrator, thus implicating the *Lucas Flour* concerns. The Court rejected this analysis, finding that the retaliatory discharge action states "purely factual questions," each of which "pertains to the conduct of the employee and the conduct and motivation of the employer. Neither of the elements requires a court to interpret any term of a collective bargaining agreement." *Id.* 108 S.Ct. at 1882. Thus, the Court held that the state law remedy in *Lingle* was " 'independent' of the collective bargaining agreement in the sense of 'independent' that matters for section 301 preemption purposes: resolution of the state law claim does not require construing the collective bargaining agreement." *Id.* The Court rejected the argument that preemption is dictated by the mere fact that the state law analysis "paralleled" the same factual issues as the contractual determination of whether plaintiff was fired for just cause:

> [W]e disagree with the court's conclusion that such parallelism renders the state law analysis dependent upon the contractual analysis. For while there may be instances in which the National Labor Relations Act preempts state law on the basis of the subject matter of the law in question, section 301 preemption merely insures that federal law will be the basis for interpreting collective bargaining agreements, and says nothing about the substantive rights a state may provide to workers when adjudication of those rights does not depend upon the interpretation of such agreements. In other words, even if dispute resolution pursuant to a collective bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agreement for section 301 preemption purposes.

*Id.* at 1883.

The Court also noted that the Illinois right to be free from retaliatory discharge was "non-negotiable" and the union would be barred by state law from waiving such a right. *Id.* at 1882–83 n. 7, 9. While in some instances a state bar to waiver in a collective bargaining agreement might be subject to preemption, *id.* at 1882 n. 7, the Court stated that "before deciding whether such a state law bar to waiver could be preempted under federal law by the parties to a collective bargaining agreement, we would require 'clear and unmistakable' evidence in order to conclude that such a waiver had been intended." *Id.* at 1883 n. 9 (citations omitted).

The Court concluded by stressing that it was striking a balance between national labor policy and deference to state law:

> The result we reached today is consistent both with the policy of fostering uniform, certain adjudication of disputes over the meaning of collective bargaining agreements and with cases that have permitted separate fonts of substantive rights to remain unpreempted by other federal labor law statutes.

*Id.* at 1884.

While plaintiff's claim is distinguishable from that presented in *Lingle*, in that plaintiff's claim involves alleged discrimination on the basis of handicap while *Lingle* involved a suit alleging retaliatory discharge, the Court, in dicta, noted in *Lingle* that section 301 does not preempt state antidiscrimination laws:

> The Court of Appeals "recognized that section 301 does not preempt state antidiscrimination laws, even though a suit under these laws, like a suit alleging retaliatory discharge, requires the state court to determine whether just cause existed to justify the discharge." 823 F.2d at 1046, n. 17. The court distinguished those laws because Congress has affirmatively endorsed state antidiscrimination remedies in Title VII of the Civil Rights Act of 1964, 78 Stat. 241, *see* 42 U.S.C. § 2000e–5(c) and 2000e–7, whereas there is no such explicit endorsement of state workers compensation laws. As should be plain from our

discussion in part III, supra, this distinction is unnecessary for determining whether section 301 preempts the state law in question. The operation of the antidiscrimination laws does, however, illustrate the relevant point for section 301 analysis that the mere fact that a broad contractual protection against discriminatory—or retaliatory—discharge may provide a remedy for conduct that coincidentally violates state law does not make the existence or the contours of the state law violation dependent upon the terms of the private contract.... *In the typical case a state tribunal could resolve either a discriminatory or retaliatory discharge claim without interpreting the "just cause" language of a collective bargaining agreement.*

*Id.* 108 S.Ct. at 1885 (emphasis added).

To date, at least two other courts of appeals and one other district court have considered whether state laws protecting the handicapped are preempted by section 301 in light of *Lingle.* In *Smolarek v. Chrysler Corp.,* 879 F.2d 1326 (6th Cir. 1989), two employees sued the same employer in state court for discrimination under the Michigan Handicapper Civil Rights Act (HCRA) and also for workers compensation retaliation. The HCRA required employers:

> not to discharge or otherwise discriminate against an individual with respect to ... the terms, conditions or privileges of employment, or limit, segregate or classify an employee ... in a way which deprives or tends to deprive an individual of employment opportunities or otherwise adversely effects the status of an employee because of a handicap that is unrelated to the individual's ability to perform the duties of a particular job or position.

*Id.* at 1331–32. Both cases were removed to federal court. One employee moved to remand, and the court denied the motion on the grounds that the claims were preempted by federal labor law. Summary judgment was then granted on both claims on the preemption issue. In support of the district court's decision, the employer on appeal pointed to a provision of the collec-

tive bargaining agreement which governed "reinstatement after disability."

Since reinstatement following disability was a matter dealt with in the collective bargaining agreement, the employer argued that to allow union employees to pursue a state law handicap discrimination claim "could disrupt and/or bypass the collective bargaining process and grievance procedures." *Id.* at 1332. Citing the "parallelism" language of *Lingle,* the court concluded that the fact that plaintiffs could have pursued their employer pursuant to the collective bargaining agreement does not prevent plaintiff from choosing to avail himself of the state law cause of action:

> Even if Smolarek may have been able to charge Chrysler under these circumstances with a violation of the collective bargaining agreement, he did not choose to do so and this does not mean that section 301, even if applicable but not utilized by plaintiff, preempts the claim.

*Id.* at 1332. The court also rejected the employer's argument that its defense may depend upon the collective bargaining agreement, in that the company's treatment of its employee was "allowed or required by the terms of the collective bargaining agreement and therefore was not based on Smolarek's handicap." *Id.* at 1333. According to the court, assertion of a defense requiring application of federal law does not support removal to federal court. *Id.* at 1333.

The *Smolarek* court's holding that a federal question defense alone does not support removal is supported by *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). In *Caterpillar,* the Supreme Court held:

> It is true that when a defense to a state claim is based on the terms of a collective bargaining agreement, the state court will have to interpret that agreement to decide whether the state claim survives. But the presence of a federal question, even a section 301 question, in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule—that the plaintiff is the master of the complaint,

that a federal question must appear on the face of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court.

*Id.* 107 S.Ct. at 2433.

Judge Kennedy filed a dissenting opinion in *Smolarek* in which six of the fifteen circuit judges joined. The primary basis for the dissent was that the state law claims asserted by plaintiffs included the claim that the employer should have "accommodated" their disabilities, a right not provided by the state handicap law as interpreted by the Michigan Supreme Court in *Carr v. General Motors Corp.,* 425 Mich. 313, 389 N.W.2d 686, *amended,* 426 Mich. 1231, 393 N.W.2d 873 (Mich.1986) (holding that a plaintiff who concededly cannot perform the duties of a particular job and who claims that his employer must accommodate him does not state a claim under HCRA). According to the dissenters, plaintiffs' claims that they were entitled to accommodation must have been preempted since the only source for such a right would have been the collective bargaining agreement. According to the dissent:

> [T]he HCRA confers no right of accommodation. Accommodation is therefore a *negotiable* right provided either by contract, here the collective bargaining agreement, or voluntarily. To allow the extension of HCRA's nondiscrimination language once negotiable rights are given would impermissibly bootstrap an accommodation requirement into the HCRA.

*Smolarek,* 879 F.2d at 1338.

The dissent distinguished the Michigan law from those interpreted by the United States Court of Appeals for the Ninth Circuit in *Ackerman v. Western Electric Co.,* 860 F.2d 1514 (9th Cir.1988), and in *Miller v. AT & T Network Systems,* 850 F.2d 543 (9th Cir.1988) (pre-*Lingle* ). In those cases, the Ninth Circuit found plaintiffs' handicap discrimination claims were not preempted by section 301 because they did not "require interpretation of a collective bargaining agreement." *Ackerman,* 860 F.2d at 1517. As the dissenters in *Smolarek* not-

ed, however, the Oregon and California statutes at issue in *Ackerman* and *Miller* required accommodation, while the Michigan statute did not. Thus accommodation was a non-negotiable right under Oregon and California law, and under the analysis articulated by the Supreme Court in *Lingle,* the state law claims were not preempted because they arose by statute independent of collective bargaining agreements. *See generally Smolarek,* 879 F.2d at 1339.

Here, unlike in *Smolarek* and like in *Ackerman* and *Miller,* Minnesota law expressly provides for the right to have one's handicap accommodated in the work place. Moreover, none of the collective bargaining agreements submitted by Fairway mention a right to be free of handicap discrimination, much less a right for a handicap to be accommodated in the work place. Indeed, each of these contracts do grant the employee the right to be free of discrimination on the basis of "race, color, religion, age, sex, union activities, or national origin." Drivers Laborer Agreement, Defendant's Exh. A at 16. Discrimination on the basis of handicap is not mentioned. Neither does the collective bargaining agreement in this case contain specific provisions governing reinstatement following disability, as did *Smolarek.* Thus, this case is even closer to *Lingle* than *Smolarek.* *See also Barron v. Safeway Stores, Inc.,* 704 F.Supp. 1555 (E.D.Wash.1988) (federal law did not preempt claim alleging failure to reasonably accommodate worker's handicap unless it was "absolutely clear that it would be necessary to interpret the collective bargaining agreement").

In *Hanks v. General Motors Corp.,* 859 F.2d 67 (8th Cir.1988), the United States Court of Appeals for the Eighth Circuit distinguished *Lingle* in a case involving an employee who claimed that she was wrongfully discharged when she failed to report to work after her daughter was sexually molested by plaintiff's supervisor. The court noted that the collective bargaining agreement to which plaintiff was subject established a four-step grievance procedure for employee complaints over issues such as sick leave, leaves of absence, work assignment, and discharge. The court found

that evaluation of plaintiff's claim necessitated analysis of the agreement and held that her claim for wrongful discharge preempted by section 301. *Id.* at 69. The court held that plaintiff's remaining claims alleging outrageous conduct, prima facia tort and intentional infliction of emotional distress, focused on the acts and motives of the parties, not on a collective bargaining agreement, and hence were not preempted. The court remanded with instructions to the district court to determine whether the employer's defenses implicated the collective bargaining agreement. *Id.* at 70.

Defendant argues that in defending plaintiff's claim it will rely on provisions of the collective bargaining agreement governing work assignment and seniority, as well as the termination agreement which defendant claims was negotiated on plaintiff's behalf by plaintiff's union, Local 120. These defenses, according to defendant, will require interpretation of agreements subject to section 301.

This argument, however, ignores the Supreme Court's admonition in *Lingle* that claims having their genesis in state law are not preempted merely because their resolution in part requires interpretation of a collective bargaining agreement. According to the Court, a state law claim may depend for its resolution upon *"both* the interpretation of a collective bargaining agreement *and* a separate state law analysis that does not turn on the agreement. In such a case, federal law would govern the interpretation of the agreement, but the separate state law analysis would not thereby be preempted." *Lingle,* 108 S.Ct. at 1885 n. 12 (emphasis added). As the Court stated in *Lueck,* not every dispute, "tangentially involving a provision of a collective bargaining agreement is preempted by section 301 . . . ." *Lueck,* 471 U.S. at 211, 105 S.Ct. at 1911. Thus, the fact that this case, having its origin solely in Minnesota law, might involve an interpretation of the collective bargaining agreement concerning work assignment and seniority, does not require that the claim be preempted. Neither does the fact that plaintiff's resignation, which defendant will claim as a defense to the MHRA action, may have

been negotiated by plaintiff's union require preemption of the entire claim. The fact that certain aspects of the claim will require application of federal law does not provide a basis for removal of the action to federal court. *Smolarek,* 879 F.2d at 1333; *Lingle,* 108 S.Ct. at 1885 n. 12.

*Johnson v. Anheuser–Busch, Inc.,* 876 F.2d 620 (8th Cir.1989) does not compel a contrary conclusion. In *Johnson,* the Eighth Circuit held that section 301 of the LMRA preempted a lawsuit brought by an employee and his wife concerning the employee's discharge following an investigation into whether the employee slashed the four tires on a car belonging to a co-worker. The court held that plaintiff's claims alleging slander, intentional infliction of emotional distress, tortious interference with contractual relations, and wrongful discharge were preempted. Citing *Lingle,* the court held that each of these claims required interpreting the collective bargaining agreement between plaintiff's union and employer, and hence were preempted. In *Johnson,* however, as in *Hanks,* and unlike the present case, plaintiff's claims were clearly of a type contemplated by a collective bargaining agreement. Moreover, there was no independent source of law directed specifically at the employment dispute which was the subject of plaintiff's lawsuit. The Supreme Court has clearly stated that section 301 was not intended to preempt all state regulation of the employment relationship. *Lingle,* 108 S.Ct. at 1885 n. 12; *Lueck,* 471 U.S. at 207 n. 4, 105 S.Ct. at 1909 n. 4; *Lockridge,* 403 U.S. at 289, 91 S.Ct. at 1919. The Court is satisfied that plaintiff's suit under the MHRA is not preempted by the LMRA. *See also Atchison T. & S.F. Ry. v. Buell,* 480 U.S. 557, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987) (employee may bring FELA claim without pursuing a labor grievance under Railway Labor Act (RLA) because "notwithstanding the strong policies encouraging arbitration, 'different considerations apply where the employee's claim was based on rights arising out of a statute designed to provide minimum substantive guarantees to individual workers.' " *Id.* 107 S.Ct. at 1415,

*quoting Barrentine v. Arkansas Best Freight System, Inc.,* 450 U.S. 728, 101 S.Ct. 1437, 1443, 67 L.Ed.2d 641 (1981)); *Colorado Antidiscrimination Commission v. Continental Airlines,* 372 U.S. 714, 83 S.Ct. 1022, 10 L.Ed.2d 84 (1963) (state statute prohibiting racial discrimination in employment not preempted by RLA).

Defendant's reliance on *McCall v. Chesapeake & Ohio Railway Co.,* 844 F.2d 294 (6th Cir.), *cert. denied,* ——U.S. ——, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988) is misplaced. In *McCall,* a locomotive engineer who was removed from service on the grounds that he was a diabetic and on insulin filed suit under the Michigan Handicapper Civil Rights Act. Following removal, the district court entered judgment on a jury verdict, and the railroad appealed. The court of appeals reversed holding that since the Michigan statute required the jury to make a decision identical to that of an arbitration board established pursuant to the RLA, the Michigan statute was preempted.

The first distinction between *McCall* and the present case is that *McCall* did not involve section 301 of the LMRA, and was thus not decided under *Lueck, Lucas Flour* and *Lingle.* Indeed, this distinction was expressly noted by the United States Court of Appeals for the Sixth Circuit when it decided *Smolarek* a year later, a case much closer to that of plaintiff here. *Smolarek,* 879 F.2d at 1334–35 n. 4. Moreover, the decision in *McCall* rested upon the fact that section 3 Second of the RLA provides for the voluntary establishment of arbitration boards, and that a collective bargaining agreement between McCall's union and his employer expressly provided for appointment of a three-member board to review findings of physical disqualification. *Id.* at 296. Moreover, a review board was in fact established in McCall's own case, and in fact ruled that McCall was disqualified from working both in his former job and in the alternative position of fire fighter. Indeed, the Sixth Circuit in *McCall* discussed section 301 of the LMRA and the principles articulated in *Lueck,* noting that whenever a state rule "purports to define the meaning or scope of a term in a collective bargaining agreement, the state rule is preempted by the federal common law promulgated pursuant to section 301." *McCall,* 844 F.2d at 300. The court also acknowledged, however, that "statutes that purport to establish rights that are independent of rights under a collective bargaining agreement are necessarily preempted even if they relate to the agreement in some way." *Id.* The court expressly refused to hold that Michigan's interest in eradicating employment discrimination necessarily must bow to the federal interest in regulating labor management relations "merely because the rights protected under the state act relate to the collective bargaining agreement in some way. *A stronger nexus must exist for the state act to be preempted.*" *Id.* (emphasis added). That stronger nexus was the arbitration board established pursuant to section 3 Second of the Railway Act which was actually employed by plaintiff in an attempt to obtain the relief that he later sought under the state handicappers act. The court concluded that the plaintiff could not have it both ways:

> If McCall can litigate an issue on the merits before an arbitration board created pursuant to section 153 Second and a collective bargaining agreement and then relitigate the identical issue in an independent judicial proceeding, the purposes of railway labor arbitration would be frustrated.

*Id.* at 301. The Sixth Circuit expressly left open the question of whether an arbitration structure which was not designed specifically to determine job qualification would automatically preempt state handicap laws. *Id.* at 303 ("we do not address the issue of what effect, if any, the state act would have on an arbitration that did not consider whether the employee was physically able to perform the duties of his or her job"). *See also, DeFord,* 867 F.2d 1080 (RLA preempts state law claims requiring interpretation of collective bargaining agreements).

■ Taken together, *Lueck* and *Lingle* stand for the proposition that while a claim whose origin rests in a collective bargain-

ing agreement is preempted by section 301, a cause of action stemming from an independent source of rights such as state law is not necessarily preempted, even if a provision of a collective bargaining agreement is a factor in resolving the state law dispute.

Here, the collective bargaining agreement relied upon by Fairway contained no provision protecting the rights of handicapped workers. The rights which plaintiff seeks to exercise, and the duties which the employer is called upon to fulfill, are established, not by a collective bargaining agreement subject to section 301 of the LMRA, but rather by an independent source of law, the Minnesota Human Rights Act. Thus, resolution of plaintiff's claim is not inextricably intertwined with a collective bargaining agreement, and prosecution of the suit will not pose an obstacle to the effectuation of any national labor policy. Thus, under *Lueck, Lucas Flour* and *Lingle*, plaintiff's claim is not preempted by section 301 of the LMRA.

II. *Motor Carrier Safety Act Preemption*

■ Defendant asserts that the Motor Carrier Safety Act, 49 U.S.C.App. § 2501, *et seq.*, and regulations promulgated thereunder, 49 C.F.R. § 390, *et seq.*, which govern the physical qualifications of drivers of motor vehicles engaged in interstate commerce, preempt plaintiff's claims. A state law is preempted when Congress evidences an intent to occupy a given field, or when it actually conflicts with federal law, or when the state law stands as an obstacle to the accomplishment of the full purpose and objectives of Congress. *Silkwood v. Kerr–McGee Corp.*, 464 U.S. 238, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984). State and local regulation of health and safety matters are presumed to constitutionally co-exist with federal regulation. *Hillsboro County, Florida v. Automated Medical Laboratories*, 471 U.S. 707, 105 S.Ct. 2371, 2376, 85 L.Ed.2d 714 (1985). State law is preempted only if the Court finds that preemption was the "clear and manifest purpose of Congress." *Jones v. Rath Packing Co.*, 430

U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977).

■ Here, defendant cites no particular provision of the Motor Carrier Safety Act, nor any pertinent regulation which will be affected by plaintiff's state law claims. 49 C.F.R. § 390.5 defines a "driver" as "any person who operates any commercial motor vehicle." "Commercial vehicles" are defined as "vehicles used on public highways in interstate commerce. . . ." *Id.* Subpart E of 49 C.F.R. § 391.41, *et seq.*, governs physical qualifications for drivers, and does particularly disqualify a person from being a driver if the person has a "clinical diagnosis of diabetes mellitus currently requiring insulin for control." 49 C.F.R. § 391.41(b)(3). It is undisputed, however, that plaintiff has not been a driver for defendant since at least 1981. Rather, since that time, he has performed yard and dock work, some of which has involved operating equipment such as tractors.

Federal motor carrier safety regulations are not intended to preclude states from establishing or enforcing state laws relating to safety, "the compliance with which would not prevent full compliance with these regulations by the person subject thereto." 49 C.F.R. 390.9. The gist of plaintiff's claim is not that he should have been retained by Fairway as a driver notwithstanding his insulin dependency, but rather that Fairway should have accommodated his handicap by assigning him to other work for which he was qualified. He admits that because of his insulin reactions he was no longer qualified to be a driver. A claim by plaintiff pursuant to the MHRA that he was qualified to be a driver notwithstanding his treatment with insulin would indeed be preempted by federal regulations. That, however, is not the theory upon which plaintiff's complaint rests. Defendant does not cite any regulations promulgated pursuant to the Motor Carrier Safety Act pertaining to workers, such as plaintiff who do not "drive" motor vehicles on public highways. To the extent that plaintiff's suit does not claim that he was entitled to a position for which he was disqualified under the Motor Carrier Safety

Act, plaintiff's suit is not preempted by the Motor Carrier Safety Act.

CONCLUSION

Accordingly, based on the foregoing and upon all the files, records and proceedings herein,

IT IS ORDERED that this matter is remanded to Hennepin County District Court.