Susan Carol HANKS, Appellant,

v.

GENERAL MOTORS
CORPORATION, Appellee.

No. 87-2279.

United States Court of Appeals,
Eighth Circuit.

Submitted June 16, 1988.

Decided Oct. 5, 1988.

Richard Forrest White, Raymore, Mo.,
for appellant.

R. Kent Sellers, Kansas City, Mo., for
appellee.

Before JOHN R. GIBSON, Circuit
Judge, BRIGHT, Senior Circuit Judge
and STUART,* Senior District Judge.

BRIGHT, Senior Circuit Judge.

In this case, we review the scope of the
preemptive effect of § 301 of the Labor-
Management Relations Act (LMRA) on
state law tort claims brought by a former
employee against her former employer in
light of the Supreme Court's recent deci-
sion in *Lingle v. Norge Div. of Magic Chef,
Inc.,* — U.S. —, 108 S.Ct. 1877, 100
L.Ed.2d 410 (1988). We determine on the
scanty record before us that the wrongful
discharge claim is preempted, but that the
remaining claims require further develop-
ment of the record by the district court
before a preemption determination may be
made. We vacate in part the judgment
dismissing the state tort claims on preemp-
tion grounds and remand this case to the
district court for further proceedings.

I. BACKGROUND

Appellee and defendant General Motors
Corporation (GM) hired appellant and plain-
tiff Susan Carol Hanks in September 1977
as a line worker in the hard trim depart-
ment at GM's Leeds plant in Kansas City,
Missouri. On January 23, 1985, Lee Cobb.
Hanks's supervisor, sexually molested
Hanks's daughter. Police arrested Cobb

* The HONORABLE WILLIAM C. STUART, Sen-
ior United States District Judge for the Southern
District of Iowa, sitting by designation.

on February 11, 1985 at the Leeds plant in full view of other employees. On March 6, 1985, Hanks entered a hospital for treatment of severe depression. She remained in the hospital until March 29, 1985. GM thereupon ordered Hanks to undergo examinations by a GM physician for the purpose of determining Hanks's ability to return to work. After Hanks underwent a second examination on April 16, 1985, GM sent her a notice that she was to return to her regularly scheduled work assignment at the Leeds plant, where Cobb still retained his position as foreman. Hanks failed to return to work, and thereafter GM sent her a letter stating that her seniority had been broken and that GM considered her to have voluntarily quit her employment.

Hanks was a member of The International al Union, United Automobile, Aerospace and Agricultural Implement Workers of America, Local Union No. 93. The collective bargaining agreement between the Union and GM established a four-step grievance procedure for employee complaints over such issues as sick leave, leaves of absence, work assignment and discharge.

Hanks did not timely file a grievance, but later, on May 6, 1987, filed this suit against GM in Missouri state court based on GM's failure to reassign her to a position where she would not have to work directly with Cobb. The complaint contained four counts: outrageous conduct on the part of GM (Count I); wrongful discharge (Count II); prima facie tort (Count III); and intentional infliction of emotional distress (Count IV).

GM removed the action to federal district court on the basis of federal question and diversity jurisdiction, and subsequently moved to dismiss or, in the alternative, for summary judgment of dismissal on the grounds that (1) because section 301 of the LMRA preempted Hanks's state law claims, those claims were barred for failure to exhaust grievance procedures and for failure to comply with the six-month statute of limitations; and (2) Hanks's state law claims failed to state a cause of action under Missouri law.

The district court determined that section 301 preempted Hanks's claims and granted summary judgment in GM's favor. This timely appeal followed.

## II. DISCUSSION

Section 301 of the Labor–Management Relations Act of 1947, 29 U.S.C. § 185(a) (1982), grants federal courts jurisdiction over "[s]uits for violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce." In *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), a leading case interpreting section 301, the Supreme Court was concerned with parties avoiding the preemptive effect of section 301 by recasting their claims for violations of a collective bargaining agreement as state law tort claims. The Supreme Court held that section 301 preempts state law tort claims when resolution of the state law claim "is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract." Such claims must either be treated as a section 301 claim or dismissed as preempted by federal labor contract law. *Id.* at 220, 105 S.Ct. at 1915–16.

The Supreme Court in 1988 again addressed the scope of federal preemption of state law claims in *Lingle, supra.* In *Lingle*, the plaintiff filed suit in Illinois state court alleging that she had been discharged by her employer for exercising her rights under the Illinois Workers' Compensation Act. In Illinois, an employee who is discharged for filing a worker's compensation claim may sue for damages. The district and appellate courts held that section 301 preempted the employer's suit, concluding that the claim for retaliatory discharge was inextricably intertwined with the provision of the collective bargaining agreement prohibiting wrongful discharge.

The Supreme Court reversed.

Illinois courts have recognized the tort of retaliatory discharge for filing a worker's compensation claim, *Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1978), and have held that it is applicable to employees covered by

union contracts, *Midgett v. Sackett–Chicago, Inc.*, 105 Ill.2d 143, 85 Ill.Dec. 475, 473 N.E.2d 1280 (1984), cert. denied, 474 U.S. 909, 106 S.Ct. 278, 88 L.Ed.2d 243 (1985). '[T]o show retaliatory discharge, the plaintiff must set forth sufficient facts from which it can be inferred that (1) he was discharged or threatened with discharge and (2) the employer's motive in discharging or threatening to discharge him was to deter him from exercising his rights under the Act or to interfere with his exercise of those rights.' *Horton v. Miller Chemical Co.*, 776 F.2d 1351, 1356 (CA7 1985) (summarizing Illinois state court decisions), cert. denied, 475 U.S. 1122, 106 S.Ct. 1641, 90 L.Ed.2d 186 (1986); see *Gonzalez v. Prestress Engineering Corp.*, 115 Ill.2d 1, 104 Ill.Dec. 751, 503 N.E.2d 308 (1986). Each of these purely factual questions pertains to the conduct of the employee and the conduct and motivation of the employer. Neither of the elements requires a court to interpret any term of a collective-bargaining agreement. To defend against a retaliatory discharge claim, an employer must show that it had a nonretaliatory reason for the discharge, cf. *Loyola University of Chicago v. Illinois Human Rights Comm'n*, 149 Ill.App.3d 8, 102 Ill.Dec. 746, 500 N.E.2d 639 (1986); this purely factual inquiry likewise does not turn on the meaning of any provision of a collective-bargaining agreement. Thus, the state-law remedy in this case is 'independent' of the collective-bargaining agreement in the sense of 'independent' that matters for § 301 pre-emption purposes: resolution of the state-law claim does not require construing the collective-bargaining agreement.

108 S.Ct. at 1881–82 (footnotes omitted). The Supreme Court additionally stated that

even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes.

*Id.* at 1883 (footnote omitted).

██ We evaluate the preemption issue here against the decision announced in *Lingle.* We observe that when an employee who is covered by a collective bargaining agreement brings a lawsuit stemming from a discharge from employment and which alleges state tort claims, the trial court must carefully consider whether section 301 preemption applies. Often that determination can be made easily. For example, in the present case, we agree with the district court that Hanks's wrongful discharge claim is preempted by section 301. In order to determine whether Hanks was wrongfully discharged, the court must interpret the terms of the collective bargaining agreement covering termination of employment for failure to return to work. A fair assessment of her claim and GM's actions would be impossible without reference to the collective bargaining agreement, a task exclusively within the realm of the arbitrators. Thus, the district court properly dismissed Count II, the wrongful discharge claim, as preempted by section 301 and we affirm that ruling.

However, the ruling on the remaining claims presents more complex issues on preemption under section 301. At first blush, it might appear from the sparse language of the complaint that Hanks's outrageous conduct, prima facie tort and intentional infliction of emotional distress claims fall outside section 301, and those claims need not call for an interpretation or construction of the collective bargaining agreement.

The tort of outrageous conduct under Missouri law requires (1) extreme and outrageous conduct by the defendant; (2) that the defendant acted in an intentional or reckless manner; and (3) that the plaintiff suffered severe emotional distress from which bodily harm resulted. *LaBrier v. Anheuser Ford, Inc.*, 612 S.W.2d 790, 793 (Mo.Ct.App.1981). None of these elements require the court to interpret any term of the collective bargaining agreement.

The same is true of Hanks's prima facie tort claim. To prove a prima facie tort, one must demonstrate (1) an intentional lawful act by the defendant; (2) intent to cause injury to the plaintiff; (3) injury to the plaintiff; and (4) absence of justification for the defendant's act. *Stegeman v. First Missouri Bank of Gasconade County,* 722 S.W.2d 349, 352 (Mo.Ct.App.1987). An assessment of the prima facie tort claim requires an inquiry into the acts and motives of the parties, not referral to the collective bargaining agreement.

Finally, Hanks's Count IV, her intentional infliction of emotional distress claim, facially does not call into question the provisions of the collective bargaining agreement. To prove this claim, Hanks must show that (1) defendant's conduct was extreme and outrageous; (2) defendant acted in an intentional or reckless manner; and (3) defendant's conduct resulted in severe emotional distress. *Hayes v. Dunn,* 709 S.W.2d 164, 164 (Mo.Ct.App.1986). Again, proof of the elements of the tort does not require interpretation of the collective bargaining agreement.

▆ Yet, the allegations of the complaint alone will not always resolve the preemption issue. *Lingle* makes plain, as we have shown, *see supra* pp. 68–69, that the defenses, as well as claims, must be considered in determining whether resolution of the state law claims requires construing the collective bargaining agreement. The factual background of the entire case must be examined against an analysis of the state tort claim and a determination made whether the provisions of the collective bargaining agreement come into play. In this case, no answer has been filed. Should affirmative defenses attempt to implicate the collective bargaining agreement, the district court should carefully analyze whether in actuality construction or interpretation of the collective bargaining agreement is required in considering such defenses.

The Supreme Court in *Lueck,* in applying preemption, and in *Lingle,* in rejecting preemption, examined the facts in each case against an analysis of the state tort claims.

*See Lingle,* 108 S. Ct. at 1881–82. Additionally, in *Lingle,* 108 S.Ct. at 1884, the Court emphasizes that the preemption principles contained in *Lueck* are designed to preserve the effectiveness of arbitration. The *Lingle* Court quoted *Lueck* as follows:

'A rule that permitted an individual to sidestep available grievance procedures would cause arbitration to lose most of its effectiveness, ... as well as eviscerate a central tenet of federal labor contract law under § 301 that it is the arbitrator, not the court, who has the responsibility to interpret the labor contract in the first instance.'

*Id.* (quoting *Lueck,* 471 U.S. at 220, 105 S.Ct. at 1915). The *Lingle* Court then added the following observation: "Today's decision should make clear that interpretation of collective-bargaining agreements remains firmly in the arbitral realm; judges can determine questions of state law involving labor-management relations only if such questions do not require construing collective-bargaining agreements." *Id.* (footnote omitted).

## III. CONCLUSION

At this point in the litigation, we think it impossible to determine that the facts are such that no construction or interpretation of the collective bargaining agreement will be required in the resolution of the dispute. A determination that preemption in this case does or does not apply to the remaining state tort claims seems premature on the meager record before us.

Accordingly, for the reasons stated above, we affirm the district court's dismissal of the wrongful discharge claim (Count II) as preempted by section 301. However, we remand the remainder of this case to the district court to determine whether resolution of the issues in the state tort claims requires a construction of the collective bargaining agreement. These determinations will control whether the trial court should enter a judgment of dismissal based on preemption or, otherwise, permit those claims which it deems completely independent of the collective bargaining agreement

to continue under the court's diversity jurisdiction.