———————————————

No. 95-3080

———————————————

Michael Luecke,                          *
                                         *
     Plaintiff-Appellant,                *        Appeal for the United States
                                         *        District Court for the Eastern
v.                                       *        District of Missouri.
                                         *
Schnucks Markets, Inc., a                *
Missouri Corporation.                    *
                                         *
     Defendant-Appellee.                 *


———————————————

                         Submitted:  January 9, 1996

                            Filed:  June 4, 1996

———————————————


Before WOLLMAN, CAMPBELL,*, and MURPHY, Circuit Judges.


CAMPBELL, Senior Circuit Judge.


     Plaintiff-appellant Michael Luecke appeals from a district court
order granting summary judgment to defendant-appellee Schnuck Markets, Inc.
("Schnuck") on the ground that plaintiff's state law defamation action is
preempted by section 301 of the Labor Management Relations Act (LMRA).
Based on our reading of the Supreme Court's rule in Lingle v. Norge Div.,
Magic Chief, 486 U.S. 399 (1988), and related cases, we reverse.

**I.**

———————————————

*The HONORABLE LEVIN H. CAMPBELL, United States Circuit Judge
for the First Circuit, sitting by designation.

Luecke, a Schnuck employee and member of Local 88 of the United Food and Commercial Workers, injured his hand while working on November 10, 1992.  He reported to a medical facility selected by Schnuck to have his hand bandaged, and then was asked to disrobe completely in order to give a urine sample, pursuant to Schnuck's new unilaterally adopted drug and alcohol policy (effective September 14, 1992).  The policy, which was written and disseminated to employees, provided in relevant part:  "[I]f an Associate has an 'on the job accident' which results in a lost time situation there will be a blood test and/or urinalysis test as a routine part of the investigation of the circumstances present at the time of the accident."  Schnuck says it adopted the policy pursuant to article 5 of its collective-bargaining agreement, which grants management the right to direct its work force.

Luecke says that he offered to produce a urine sample with his clothes removed except for the part of his shirt around his bandaged wrist. This apparently was unacceptable to medical personnel.  Luecke left without giving a urine sample.  That afternoon, Jenise Kramer, a Schnuck manager, called Luecke's house and was told that he was not there.  Luecke says that Kramer then informed his wife, without knowing who she was, that Luecke had "refused" to take a drug test, and that his employment would be terminated within 24 hours if he did not take one.  Kramer offers a somewhat different version of this conversation in an affidavit; she says that after medical personnel informed her that Luecke had refused to take a drug test, she tried to contact him at home and spoke with someone "who eventually identified herself as being Mr. Luecke's wife."  Kramer left a message whose "substance" was that after being involved in a work-related accident, Luecke had "failed to have a drug test," and "if he failed to take a drug test as soon as possible, his employment could be terminated."

Kramer and Luecke spoke on November 11, and the following day, Luecke took a drug test.  As the results were negative, no

discipline followed.  Thereafter, Kramer and other Schnuck employees are said by Luecke to have published within and without the company the allegedly false statement that Luecke had "refused" to take a drug test.

In October 1994 Luecke sued Schnuck in state court, alleging defamation based upon Kramer's communication to Luecke's wife, and Kramer's and other employees' publication of Luecke's alleged refusal to take a drug test.  Schnuck removed the action to federal court, arguing that plaintiff's claim arose under section 301 of the LMRA, which confers federal jurisdiction over actions for a breach of a contract between an employer and a labor organization.  Schnuck then moved to dismiss the action, or in the alternative, for summary judgment, contending that plaintiffs' claim was preempted, was time-barred, and failed to state a cause of action.  The district court granted summary judgment to Schnuck, finding that plaintiff's state law defamation claim was preempted by section 301 of the LMRA.  This appeal followed.

## II. Discussion

We review a grant of summary judgment <u>de novo</u> to determine whether the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  In so doing, we construe the facts in the light most favorable to the non-movant, plaintiff.

The dispositive question is that of subject matter jurisdiction.  In removing the case to federal court, the defendant asserted federal question jurisdiction on the theory that the LMRA preempted plaintiff's state law defamation claim.[1]  Plaintiff countered that the claim was not preempted and that the case should

_____

[1] As complete diversity was not satisfied here, the presence of a federal question was necessary for a proper removal.

3

be returned to the state court.

For federal question jurisdiction, the federal question generally must appear on the face of the complaint.  See Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987).  An exception to this rule, often applied in labor cases, holds that when "an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law."  Id. at 393 (emphasis supplied).  Applying this exception, the district court held that plaintiff's defamation claim was "inextricably intertwined" with the terms of Schnuck's collective-bargaining agreement with its employees, and was therefore preempted by section 301 of the LMRA.  See id. at 394 ("Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement.'") (internal citation omitted).  The district court held that the statements challenged by Luecke "involve the ongoing employment relationship between plaintiff and defendant and concern a work-related injury and its subsequent investigation.  As such, they are governed by the grievance procedures set forth in the collective-bargaining agreement."  The court also quoted from an early settlement letter to Schnuck from Luecke's attorney, who referred to the statements in question as occurring "[a]s a result of Schnucks' attempt to enforce a drug testing policy in violation of the Collective Bargaining Agreement with Local 88."  Concluding that the case was properly removed, the court granted summary judgment in defendant's favor on preemption grounds.

The Supreme Court has made clear that a state law claim is

4

preempted by section 301[2] only if the claim is "inextricably intertwined" with the terms of a collective-bargaining agreement. <u>Allis-Chalmers Corp.</u> v. <u>Lueck</u>, 471 U.S. 202, 213 (1985). The unanimous Court has stated, "[A]n application of state law is pre-empted by § 301 of the Labor Management Relations Act of 1947 only if such application requires the interpretation of a collective-bargaining agreement." <u>Lingle</u>, 486 U.S. 399 at 413 (footnote omitted); <u>see also</u> <u>Livadas</u> v. <u>Bradshaw</u>, 114 S. Ct. 2068, 2078 (1994) ("[W]e were clear [in <u>Lingle</u>] that when the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished[.]") (citing <u>Lingle</u>, 486 U.S. at 413 n.12). The proposition follows that "a state law claim may involve analysis of the same set of facts as a claim arising under the collective bargaining agreement without compelling preemption." <u>Hanks</u> v. <u>General Motors Corp.</u>, 906 F.2d 341, 343 (8th Cir. 1990) (citing <u>Lingle</u>, 486 U.S. at 407-408).

In <u>Lingle</u>, an employee's state-law action against her employer alleging that she was discharged in unlawful retaliation for claiming worker's compensation benefits was declared to be independent of the collective-bargaining agreement even though the agreement expressly prohibited discharge without proper or just cause and provided a grievance procedure to resolve any disputes over the interpretation or application of the agreement. <u>Lingle</u>, 486 U.S. at 401-402. The Court explained that the pertinent factual inquiry in the state retaliatory discharge action did not turn on any term of the agreement, but rather on the employee's

---

[2] Section 301 provides:
(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, . . . may be brought in any district court of the United States having jurisdiction of the parties . . . .
29 U.S.C. § 185(a).

conduct and the employer's conduct and motivation. See id. at 407. Because resolution of the state-law action did not require an interpretation of the collective-bargaining agreement, allowing it to be independently brought was "consistent both with the policy of fostering uniform, certain adjudication of disputes over the meaning of collective-bargaining agreements and with cases that have permitted separate fonts of substantive rights to remain unpre-empted by other federal labor-law statutes." Id. at 410-411.

In light of the foregoing, we conclude that the district court erred in holding that plaintiff's state defamation action was preempted. Luecke alleges in the action that Kramer and other Schnuck employees, acting within the scope of their authority, published false statements with total disregard for their falsity, injuring his reputation in the community and business profession. To recover damages under state law, Luecke will need to establish that Kramer or other employees stated that he had "refused" to take a drug test, that the statements were false and were made with knowledge of or reckless disregard as to their falsity, that they were heard by others, and that they tended to expose Luecke to hatred or ridicule and damaged his reputation. Nazeri v. Missouri Valley College, 860 S.W.2d 303 (Mo. banc 1993); Missouri Approved Instruction (MAI) 23.10(2).[3] Keeping in mind the central factual inquiry -- what was said to whom, whether it was false and knowingly or recklessly so, and whether damages resulted -- we look to see whether an interpretation of the collective-bargaining agreement will be required in order to resolve the state claim.

---

[3] Although subsection (1) of MAI 23.10 generally governs defamation claims brought by a private plaintiff, the elements stated here are derived from 23.10(2), which applies when a defendant's statements are qualifiedly privileged. At oral argument, the defendant's counsel said that Schnuck would assert a qualified privilege defense. To the extent this defense is applicable, plaintiff would carry an additional burden of showing that the defamatory statements were made with malice. Carter v. Willert Home Products, Inc., 714 S.W.2d 506, 513 (Mo. banc 1986).

The answer, on the record here, is "no."

Schnuck contends that resolution of the defamation claim and its defenses[4] depends upon interpreting two articles of the collective-bargaining agreement "and/or policies implemented pursuant to that agreement." First, Schnuck argues that it adopted the drug testing policy, enforcement of which underlay the allegedly defamatory statements, pursuant to authority conferred in article 5 of the agreement, giving management the right to direct its work force, "including the right to plan, direct and control operation, . . . [and] suspend and discharge for proper cause." Second, article 6 establishes grievance procedures to be followed for "any differences, disputes or complaints aris[ing] over the interpretation or application of the contents of this Agreement." Conferences are pursued first, then arbitration if necessary.[5]

But this is not a case where the state-law defamation complaint attacks the propriety of Schnuck's drug policy or Schnuck's right to require drug tests.[6] What is challenged is the

---

[4] In ascertaining whether the state action will require an interpretation of the collective-bargaining agreement, we consider probable defenses as well as the claim itself. See Hanks v. General Motors Corp., 859 F.2d 67, 70 (8th Cir. 1988).

[5] The parties have not included in the record on appeal a complete copy of the collective-bargaining agreement in effect at the time this action arose. We accordingly limit our review to the provisions relied upon by Schnuck in support of preemption.

[6] Cf. Schlacter-Jones v. Gen. Tel., 936 F.2d 435, 441 (9th Cir. 1991) (employee's state law claims were preempted by section 301 where the "allegations turn on the propriety of [the company]'s Drug Policy and cannot be assessed without examining the CBA to determine whether the Drug Policy was a valid term and condition of employment[]"); Jackson v. Liquid Carbonic Corp., 863 F.2d 111, 118, 121 (1st Cir. 1988) (employee's state law claims were preempted by section 301 where "[t]he central thesis of his suit questions whether [the employer]'s drug-testing protocol was reasonable[]" in light of the union's cession of authority to the employer to conduct medical examinations and to post reasonable rules), cert. denied, 490 U.S. 1107 (1989).

employer's alleged dissemination to others of supposedly false information, _i.e._, that plaintiff had refused to submit to the test. Plaintiff's counsel reiterated at oral argument that his client did not challenge Schnuck's right to require its employees to be tested. Nor is plaintiff contesting management's right to suspend or discharge an employee for failure to take the test. Luecke took the drug test, passed it, and was not suspended or discharged. Resolving Luecke's defamation claim will not depend upon construing article 5: no express or implied term in that provision guides the factual inquiry into whether the speakers actually said Luecke refused to take the test, whether their statements were false, whether malice attached, and whether damages resulted. See Hawaiian Airlines, Inc. v. Norris, 114 S. Ct. 2239, 2248 (1994) (reiterating Lingle's holding that a state law claim involving "purely factual questions" that do not turn upon the terms of a collective-bargaining agreement are not preempted by section 301); see also Hanks, 906 F.2d at 345 (tort claims against employer who required employee to work with a person who sexually abused her daughter were not preempted, as "none of the terms or provisions of that agreement shed any light on the appropriateness of [the employer's] conduct[]"); Tellez v. Pacific Gas & Elec. Co., 817 F.2d 536, 538 (9th Cir.) (defamation claim against employer who distributed a suspension letter saying employee had bought drugs on the job was not preempted, as claim did not assert rights under the collective-bargaining agreement, and the agreement did not require management to send such a letter or provide guidelines if such a letter was sent), cert. denied, 484 U.S. 908 (1987).

Neither is Luecke's claim dependent upon a construction of article 6, which sets forth grievance procedures. As in Lingle, these procedures are available for a broad range of disputes, and the mere possibility that Luecke could file a grievance on these same facts does not dictate that his claim is preempted. See Lingle, 486 U.S. at 408-410; Hanks, 906 F.2d at 345 ("The crucial issue under Allis-Chalmers is not whether a claim can be taken

8

through the grievance process but whether the state law tort claim being asserted purports to give meaning to the terms of the labor contract.") (citing Keehr v. Consolidated Freightways, Inc., 825 F.2d 133, 137 (7th Cir. 1987)). Here, the state law defamation action will not, to any material degree, give meaning to the terms of article 5 or 6. The record shows that the union grieved the implementation of the drug testing policy pursuant to article 5. Luecke is not repeating that effort; he represents that he has no intention to do so.[7]

Schnuck nevertheless maintains that the state action would require interpreting article 6, because permitting Luecke to bring a defamation action in state court opens the door to other employees doing the same and forgoing arbitration. The short answer to this is that employees are not required to use grievance procedures exclusively, in preference to state lawsuits, so long as a parallel state action does not require interpreting the collective-bargaining agreement. Lingle, 486 U.S. at 408-410.

Nor do Schnuck's likely defenses depend upon an interpretation of the collective-bargaining agreement. Schnuck says that it will assert a defense of qualified privilege which will require reference to the agreement. To make out such a defense, Schnuck would have to show that an otherwise defamatory statement was made in good faith by a speaker who had an interest in or duty with respect to the subject matter, to a person having a corresponding interest or duty. Carter v. Willert Home Products, Inc., 714

---

[7] Luecke's counsel stated in an early settlement letter that the defamatory statements occurred "[a]s a result of Schnuck's attempt to enforce a drug testing policy in violation of the Collective Bargaining Agreement with Local 88." The letter was written a few months after the union filed its grievance regarding that policy. The complaint, filed almost two years later, contains no indication that the drug testing policy was being challenged in the action, and Luecke's counsel expressly confirmed at oral argument that it was not.

S.W.2d 506, 513 (Mo. banc 1986) (citation omitted).

Schnuck contends that in speaking to Luecke's wife, its manager, Jenise Kramer, was carrying out her duty to ensure compliance with the drug testing policy. Her communications, the argument goes, were simply made in good faith furtherance of Schnuck's right to control the work force under article 5. However, Luecke's defamation claim does not deny that Kramer was acting pursuant to authority granted by Schnuck, nor that Schnuck had a right to control its work force. What plaintiff contests is Kramer's right to pass along to his wife or others the allegedly false information about his refusal to be tested. Article 5, however, said nothing about the procedures to be followed in conducting investigations and enforcing policies of the employer. The collective-bargaining agreement in effect at the time this action arose made no mention whatever of a drug testing policy or of procedures for enforcement, nor did it impose any requirement of confidentiality.

We recognize that, since the incident in question, Schnuck has expressly incorporated the drug testing policy into its current collective-bargaining agreement. The new agreement apparently contains language prohibiting dissemination of records or their contents to any third party except with the employee's written consent or for other limited reasons.[8] We need not, and do not, decide whether a defamation claim of the type brought here would be preempted under these express terms; it is enough that the earlier controlling agreement was entirely devoid of such terms. To be sure, two months before the present incident, management had

---

[8] The recent collective-bargaining agreement provides that company records "shall be kept in strict confidence, and neither said records nor the contents thereof shall be disseminated to any third party except upon written authorization by the Associate, or to the extent required by law, or to the extent required by the Company for use in any proceeding involving the Associate."

unilaterally promulgated a written drug testing policy which included the same confidentiality provision. But absent its incorporation within the collective-bargaining agreement -- or absent incorporation of a compatible management rights clause, e.g., covering the performance of medical examinations, or some longstanding practice or custom from which to infer incorporation -- we do not believe that Schnuck's unilateral adoption of the policy rendered its language, in these circumstances, a literal part of the agreement for purposes of the test set out in Lingle.[9] We conclude that while the provisions of the collective-bargaining agreement will perhaps be "consulted," they need not be interpreted in order to resolve any qualified privilege defense that Schnuck may raise in the state defamation proceeding. See Livadas, 114 S. Ct. at 2079 ("the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished") (citing Lingle, 486 U.S. at 413 n.12).

The instant case is distinguishable from Johnson v. Anheuser Busch, Inc., 876 F.2d 620 (8th Cir. 1989), in which an employee accused by co-workers of slashing tires in a company lot was discharged for violating plant rules. He grieved the discharge, was reinstated, and then brought multiple tort claims, including libel and slander, against his employer and co-workers. This

---

[9] See Jimeno v. Mobil Oil Corp., 66 F.3d 1514 (9th Cir. 1995) (refusing to imply into collective-bargaining agreement a unilaterally adopted, unwritten termination policy followed in practice for years, absent clear and unmistakable evidence that the union accepted the policy and waived its members' rights under state law); but cf. Schlacter-Jones, 936 F.2d at 440 ("A drug and alcohol testing program is a working condition 'whether or not it is specifically discussed in the [collective-bargaining agreement].") (citation omitted); Jackson, 863 F.2d at 120 (viewing a unilaterally passed drug testing policy as a "working condition" within the scope of a collective-bargaining agreement, to be evaluated for reasonableness, where union had accepted employer's authority to conduct medical examinations and to pass "reasonable" rules).

11

circuit held that the libel claim against the employer was preempted by section 301. Because the allegedly false accusations resulted in the employee's discharge for violating specific misconduct rules, consideration of the collective-bargaining agreement was needed to ascertain whether the discharge was wrongful. See id. at 624. The slander claim against the co-workers was also preempted, because the allegedly false accusations "relate[d] to a dispute over an event occurring at the workplace and would be governed by the grievance procedure" in the agreement. Id. However, the libel claim against a co-worker was not preempted, because the elements of that claim did not require construction of any term of the agreement. See id. at 625.

Unlike Johnson, Luecke's claim against his employer does not depend on construing a term of the collective-bargaining agreement. Luecke ultimately took the required drug test, which was negative, and no discharge or other discipline resulted. The allegedly defamatory statement by Kramer was part of the company's attempt to enforce Schnuck's drug testing policy, but the collective-bargaining agreement then in effect said nothing about such a policy or its enforcement, or even about some more general management right to require medical examinations to ensure employees' fitness. But cf. Strachan v. Union Oil Co., 768 F.2d 703, 705 (5th Cir. 1985) (holding that suspended employees suspected of drug use were preempted from suing their employer for defamation and other torts, where "[t]he issues concerning the medical examinations and involving the blood and urine tests are clearly within the power of the company under the collective bargaining agreement to insist upon medical examinations when there is doubt as to the physical condition of an employee at work[]"); see also Bagby v. General Motors Corp., 976 F.2d 919 (5th Cir. 1992) (holding that defamation claim arising out of temporary suspension of worker was preempted, where employer followed specific disciplinary procedures in collective-bargaining agreement and company policy).

12

As we find that Luecke's defamation action is not preempted by section 301, there is no federal question authorizing federal jurisdiction over the case. We remand the case to the district court with instructions to remand it to the state court from which it was removed.

So ordered.

A true copy.

    Attest:

        CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.