# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1632

_____

| | | |
|---|---|---|
| John G. Meyer, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the Eastern |
| Schnucks Markets, Inc., | * | District of Missouri. |
| and Cy Jansen, | * | |
| | * | |
| Appellees. | | |

_____

Submitted:  September 24, 1998

Filed:  December 24, 1998

_____

Before WOLLMAN, JOHN R. GIBSON, and MORRIS SHEPPARD ARNOLD,
Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

John Meyer is a meatcutter who has worked for Schnucks Markets since 1960. He believes that in recent years Schnucks managers have failed to enforce proper sanitation procedures in their meat departments and have condoned mixing outdated meat with fresh meat and then selling the mixture as fresh. On several occasions, Mr. Meyer expressed his concerns about these matters to his supervisors. Mr. Meyer claims that in retaliation for his criticisms Schnucks allowed its supervisors to harass him and to criticize him publicly, and that Schnucks transferred him to a store farther

away from his home.  Mr. Meyer further asserts that Cy Jansen, a Schnucks vice-president, told him in the presence of other employees that he was "a poor and substandard employee, that he was a trouble maker, that he had no right to question the improper health and safety standards ... and that Plaintiff was a complainer and sounded like a lawyer."

Mr. Meyer sued Schnucks and Mr. Jansen in Missouri state court for slander, intentional infliction of emotional distress, negligent infliction of emotional distress, tortious interference with a business relationship, and civil conspiracy.  Schnucks removed the case to federal court on the basis of federal-question jurisdiction.  *See* 28 U.S.C. § 1441(b).  Schnucks then moved to dismiss or for summary judgment, arguing that because all of Mr. Meyer's claims arose in the course of his employment they could have been pursued through the grievance procedure set up by the collective bargaining agreement (CBA) in effect at Schnucks and were therefore completely preempted by § 301 of the Labor Management Relations Act (LMRA), *see* 29 U.S.C. § 185(a).

The district court rejected Schnucks's argument that all of the claims were preempted as too broad, and held that the slander claim was not preempted because it did not depend on the interpretation of any provision of the CBA.  *See Luecke v. Schnucks Markets, Inc.*, 85 F.3d 356, 359-62 (8th Cir. 1996), *cert. denied*, 117 S. Ct. 517 (1996).  The district court concluded, however, that the claims for intentional infliction of emotional distress and civil conspiracy were preempted because they required the interpretation of the section of the CBA protecting employees against unjustifiable or discriminatory transfers.  Since the district court had federal-question jurisdiction over the transfer-based claims, it then reasoned, it was authorized to exercise supplemental jurisdiction over the state-law claims.  *See* 28 U.S.C. § 1367(a).  After a careful analysis, the district court granted summary judgment to Schnucks, holding that each of the five counts in Mr. Meyer's complaint either failed to state a claim or was preempted by the LMRA or Missouri workers' compensation law.  Mr. Meyer appeals.

We hold that none of Mr. Meyer's claims, even those based on his transfer to another store, is preempted by the LMRA, and thus that the district court had no removal jurisdiction over the case. Since federal jurisdiction is lacking, we do not reach the question of the propriety of summary judgment to Schnucks on Mr. Meyer's claims.

## I.

We note, first, that the district court was right to reject Schnucks's suggestion that Mr. Meyer's claim was preempted by the LMRA merely because his complaint alleged facts that could have formed the basis for a grievance under the CBA. The Supreme Court has held that the fact that a CBA provides for arbitrated dispute resolution for claims based on the same facts as those forming the basis for a plaintiff's complaint does not mean that state-law causes of action based on those facts are preempted. There is no preemption unless the state-law claim itself is based on, or dependent on an analysis of, the relevant CBA. *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 405-06 (1988). A plaintiff is the master of his or her cause of action, and the fact that a claim could have been laid as a violation of a CBA does not necessarily mean that the LMRA preempts it. We have applied this principle many times. *See*, *e.g.*, *Luecke*, 85 F.3d at 359, and *Hanks v. General Motors Corp.*, 906 F.2d 341, 343 (8th Cir. 1990).

We recognize that some of our cases do not seem to have applied *Lingle* in an appropriately narrow way. In *Johnson v. Anheuser Busch, Inc.*, 876 F.2d 620, 624 (8th Cir. 1989), we held that a claim for slander did indeed depend on an analysis of the CBA and was thus preempted, when the statements in question "relate[d] to a dispute over an event occurring at the workplace and would be governed by the grievance procedure." In the same case, we held that claims arising from an employee's alleged wrongful discharge, such as intentional infliction of emotional distress, also depended on rights and obligations created by the CBA and were thus preempted. *Id*. In deciding whether the claims were preempted, moreover, we noted that we had to

consider defenses based on the CBA as well and thus took a broad view of what it means for a case to be substantially dependent upon an interpretation of a CBA. *Id.* at 623.

On the other hand, a separate line of our cases holds that claims based on state law that are intimately related to events at the workplace and could have been taken through the grievance process are not preempted as long as they involve purely factual questions and are not based on provisions of the CBA. *Luecke*, 85 F.3d at 359, holding that a state defamation action was not preempted, is such a case. "[N]o express or implied ... provision" of the CBA, we said, "guides the factual inquiry into whether the speakers actually said [that] Luecke refused to take the [drug] test, whether their statements were false, whether malice attached, and whether damages resulted." *Id.* at 360. A number of our cases have also held that state-law retaliatory discharge claims are not preempted by the LMRA, because they turn on purely factual questions about the employer's conduct and motives rather than on the scope of the employer's contractual authority to discharge employees. *See*, *e.g.*, *Humphrey v. Sequentia, Inc.*, 58 F.3d 1238, 1244 (8th Cir. 1995). The fact that the defense to the claim relied upon the CBA, the employer asserting that there was "just cause" for the discharge under the CBA's terms, was held not to create a basis for LMRA preemption. *Id.*

When faced with conflicting precedents of this kind, we are free to choose which line of cases to follow. *Kostelec v. State Farm Fire and Cas. Co*, 64 F.3d 1220, 1228 n.8 (8th Cir. 1995). We think that the narrower approach to LMRA preemption, which asks only whether the claim itself is necessarily grounded in rights established by a CBA, is more faithful to the Supreme Court's holding in *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 399 (1987), the basis for our holding in *Humphrey*, 58 F.3d at 1244. For there to be complete preemption, we believe that the claim must require the interpretation of some specific provision of a CBA; it is not enough that the events in question took place in the workplace or that a CBA creates rights and duties similar or identical to those on which the state-law claim is based.

II.

Although the events underlying Mr. Meyer's complaint occurred on the job, the claims themselves are not inherently tied to any provision of the relevant CBA. To prove slander, Mr. Meyer will have to produce evidence that Mr. Jansen made false statements that injured Mr. Meyer's reputation. The elements of tortious interference with a business relationship are the existence of a contract or of a valid business expectancy known to the defendant, intentional and unjustified interference causing a breach of the contract, and damages. Except for the existence of the valid business expectancy itself, which can be demonstrated by mere reference to the CBA without any analysis of it, neither of these causes of action is based on, or substantially dependent upon an interpretation of, the CBA. Therefore, neither of them is automatically preempted by the LMRA. For similar reasons, we see nothing in the basic elements of the other claims that requires analysis of the CBA for their resolution.

The district court believed that one aspect of Mr. Meyer's claims was based on the CBA. Noting that Mr. Meyer's transfer from one store to another was alluded to in two counts of the complaint, and that section 8.9 of the CBA provides that "[t]ransfers from one store to another will be made for justifiable reasons and will not be used for the purpose of discriminating against any associate," the district court concluded, first, that Mr. Meyer's claim was based in part on a right not to be unjustifiably transferred and, second, that that right was created by, or was at least "substantially dependent on analysis of," the CBA. We do not believe, however, that any of Mr. Meyer's claims is based on his contractual right not to be transferred without justification.

The transfer is first featured in the second count of the complaint, which alleges that Mr. Jansen and other Schnucks supervisors retaliated against Mr. Meyer by harassing him, publicly criticizing him, and transferring him to a store farther away from his home. Mr. Meyer claimed that these facts gave rise to a cause of action for intentional infliction of emotional distress under Missouri law. The fact that the CBA

with Schnucks also prohibited the transfer of employees without justification or for discriminatory reasons has no legal significance in this context, since Mr. Meyer's state-law claims are not dependent upon an interpretation of the CBA. To decide those claims, a trier of fact would have to consider only Schnucks's conduct and motives, and the effect of its behavior on Mr. Meyers. " '[P]urely factual questions' about an employee's conduct or an employer's conduct and motives do not 'requir[e] a court to interpret any term of a collective-bargaining agreement.' " *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 261 (1994), quoting *Lingle*, 486 U.S. at 407. It is not necessary to the success of Mr. Meyer's claim that any particular act that gave rise to it constitute an independent tort or contract violation. *See Restatement of Torts* (*Second*) § 46, comment b, at 72 (1965). Since the second count of Mr. Meyer's complaint is not based on rights created by, or substantially dependent on an analysis of, the CBA, it is not preempted by the LMRA. The claim for intentional infliction of emotional distress was therefore not removable to federal court.

The transfer also figures obliquely in the fifth count of the complaint, which asserts a civil conspiracy by the defendants. That count incorporates the second count, which itself, as we have said, relies partly on the alleged wrongful transfer. But since the wrongfulness of the transfer is not bottomed on rights created by the CBA, the claim laid in the fifth count is not either, and it therefore cannot be preempted by the LMRA.

Since Mr. Meyer's state-law claims are not preempted by the LMRA, the district court did not have removal jurisdiction over the case on that ground. We therefore vacate the district court's order granting summary judgment to Schnucks, and we remand the case to the district court with directions that it remand the case to the state court from which it was wrongly removed.

JOHN R. GIBSON, Circuit Judge, dissents.

-6-

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.