HEANEY, Circuit Judge, dissenting.
The majority opinion is inconsistent with the United States Supreme Court’s decision in Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994), and with the decisions of this circuit in Taggart v. Trans World Airlines, Inc., 40 F.3d 269 (8th Cir.1994), Luecke v. Schnucks Mkts., Inc., 85 F.3d 356 (8th Cir.1996), and Meyer v. Schnucks Mkts., Inc., 163 F.3d 1048 (8th Cir.1998), and for that reason, I respectfully dissent.[3]
Justice Blackmun, writing for the Court in Norris, reviewed, the scope of federal preemption under the RLA in a case involving a state law claim brought by an aircraft mechanic alleging he was discharged for refusing to certify a plane that he considered unsafe and for reporting his safety concerns to the FAA. The Court held that Norris’s state law claim was not preempted even though he also could seek redress through the RLA’s arbitral mechanism. The Court stated that “no proposed interpretation [of the RLA] demonstrates a clear and manifest congressional purpose to create a regime that broadly pre-empts substantive protections extended by the States, independent of any negotiated labor agreement.” Nonis, 512 U.S. at 255-56, 114 S.Ct. 2239.
Here, the majority recognizes, and I agree, that the state of Missouri has created tort actions for false arrest, negligence, libel and slander, and invasion of privacy, both by placing Gore in a false light and by disclosing private acts. . I part company with the majority, however, in its conclusion that the collective bargaining agreement is the defining source of the duties specifically owed by TWA to Gore. Here, as in Norris, the collective bargaining agreement is not the “only source” of the rights that Gore asserts in his state law claims. See id. at 258, 114 S.Ct. 2239. Wholly apart from the collective bargaining agreement, TWA had an obligation not to violate Gore’s state law rights. The parties’ obligation under the RLA to arbi *953 trate disputes arising out of the application or interpretation of the collective bargaining agreement does not relieve the company of this duty, nor does it deprive an employee of his opportunity to bring a state law action for damages. See id. Here, as in Norris, we have purely factual questions about an employee’s conduct, the employer’s response to that conduct, and its motives for so responding.
The majority’s argument that resorting to the collective bargaining agreement is necessary to determine where state statutes have been violated is foreclosed by the Supreme Court’s decisions in Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), and in Norris, holding that the issue of whether an employer’s action establishes the elements of a claim under state law is purely a factual question. Norris’s impact on the jurisprudence relating to an employee’s right to bring a state law action in RLA cases is illustrated by the pre- and post-Norris decisions in the Fifth Circuit case of Hirras v. National R.R. Passenger Corp., 10 F.3d 1142, cert. granted and judgment vacated, 512 U.S. 1231, 114 S.Ct. 2732, 129 L.Ed.2d 855 (1994). There Hirras asserted, inter alia, a state law claim for intentional infliction of emotional distress based on verbal abuse by coworkers, abusive telephone calls from unknown sources, and offensive graffiti. The district court held that the claim was preempted by the RLA; the Fifth Circuit affirmed. On certiorari, the Supreme Court vacated the decision and remanded to the Fifth Circuit for reconsideration in light of Norris. On remand, the Fifth Circuit rejected the employer’s argument that a state law claim for intentional infliction of emotional distress arises out of the collective bargaining agreement because the agreement determines the standard by which the employer’s conduct is judged. See Hirras v. National R.R. Passenger Corp., 44 F.3d 278 (5th Cir.1995). The similarity between Hirras and this case should dictate the same result, one which the majority eschews.
I thought that this court settled the questions raised here in the two Schnucks cases. In Luecke v. Schnucks Mkts., Inc., 85 F.3d 356 (8th Cir.1996), an employee brought an action for defamation against his employer, Schnucks Markets, alleging that the employer told others that he refused to take a drug test. Schnucks argued that resolving the defamation claim depended on an analysis of the collective bargaining agreement’s clauses regarding management rights and establishing a grievance procedure. We held that the claim was not preempted because the issue could be determined based on whether the employee took the drug test, whether the company’s statement that he refused was false, and whether it was made with malice. Similarly, here the questions to be answered are whether Gore was confined without legal justification, and whether Gore was libeled or slandered. The first question can be answered without reference to the collective bargaining agreement. Either the employer was justified or it was not. Although TWA’s justification defense may be based on the collective bargaining agreement, the agreement would at most be consulted, and not interpreted. Whether Gore was libeled or slandered can be answered by determining whether TWA made a defamatory false statement about Gore, published it with the requisite intent, and in so doing damaged Gore, all questions that can be answered without interpreting the collective bargaining agreement. This reasoning applies equally to the privacy and negligence claims.
In Meyer v. Schnucks Mkts., Inc., 163 F.3d 1048 (8th Cir.1998), John Meyer, a meat cutter, brought a state law action for slander, intentional infliction of emotional distress, and other claims. Schnucks removed the case to federal court alleging preemption. The district court held some claims were preempted; others were not. It then granted summary judgment on the non-preempted claims. Our court reversed, holding that none of the plaintiffs claims were preempted. We stated:
*954 Although the events underlying Mr. Meyer’s complaint occurred on the job, the claims themselves are not inherently tied to any provision of the relevant CBA. To prove slander, Mr. Meyer will have to produce evidence that Mr. Jansen made false statements that injured Mr. Meyer’s reputation. The elements of tortious interference with a business relationship are the existence of a contract or of a valid business expectancy known to the defendant, intentional and unjustified interference causing a breach of the contract, and damages. Except for the existence of the valid business expectancy itself, which can be demonstrated by mere reference to the CBA without any analysis of it, neither of these causes of action is based on, or substantially dependent upon an interpretation of, the CBA. Therefore, neither of them is automatically preempted by the LMRA. For similar reasons, we see nothing in the basic elements of the other claims that requires analysis of the CBA for their resolution.
Id. at 1051.
Similarly, any inquiry in this case into the collective bargaining agreement merely would require its consultation, and not interpretation of it. Accordingly, Gore’s claims are not be preempted.
For the reasons outlined above, I have no alternative but to dissent.

. I recognize that some of the cases I rely upon involve preemption questions under the Labor Management Relations Act (LMRA). I agree with the majority that preemption analysis under the LMRA and the RLA is virtually identical. See Norris, 512 U.S. at 263 n. 9, 114 S.Ct. 2239.