Kevin WILLIAMS; Pat Williams, Plaintiffs–Appellees/Cross Appellants,

v.

NATIONAL FOOTBALL LEAGUE; John Lombardo, M.D., Defendants–Appellants/Cross Appellees,

Brian Finkle, Defendant,

Adolpho Birch, Defendant–Appellant/Cross Appellee.

National Basketball Association; National Hockey League; United States Anti–Doping Agency; Major League Baseball, Amici on behalf of Appellant.

National Football League Players Association, Plaintiff–Appellant,

v.

National Football League; National Football League Management Counsel, Defendants–Appellees.

Nos. 09–2247, 09–2462, 09–2249.

United States Court of Appeals, Eighth Circuit.

Dec. 14, 2009.

---

## ORDER

The petition for rehearing en banc is denied. The petition for rehearing by the panel is also denied.

LOKEN, Chief Judge, dissenting from denial of rehearing en banc.

I join Part II of Judge Colloton's dissent. In addition, I conclude that another aspect of the panel's decision warrants rehearing en banc.

The panel explains that the statutory claims under Minnesota's Drug and Alcohol Testing in the Workplace Act and Lawful Consumable Products Act were first asserted by Vikings players Kevin Williams and Pat Williams after the NFL removed their case to federal court. After dismissing the players' common law and federal claims, and the NFLPA's § 301 claim, the district court declined to exercise supplemental jurisdiction over these statutory claims, leaving the injunction against the NFL's suspension of the players in place while those claims are litigated in state court. In my view, this was an abuse of discretion that seriously jeopardizes important interests protected by the federal labor laws.

Even if § 301 complete preemption would not apply to removal of these Minnesota statutory claims to federal court, "when a defense to a state claim is based on the terms of a collective-bargaining agreement, the state court will have to interpret that agreement to decide whether the state claim survives." *Caterpillar Inc. v. Williams,* 482 U.S. 386, 398, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). The Minnesota statutes in question afford an employee remedies against his "employer." *See* MINN.STAT. §§ 181.938, 181.956. Thus, one defense to these claims is that the NFL is not an "employer" subject to the statutory duties and remedies. As the panel recognized, the question whether, for these purposes, the employer of Kevin Williams and Pat Williams is the NFL or the Minnesota Vikings is complex. A proper answer requires analysis of the Collective Bargaining Agreement between the NFL and the NFLPA, the NFL Con-

stitution and Bylaws, and the Standard Player Contract between the players and the Vikings. *See Clarett v. NFL,* 369 F.3d 124, 127–28 (2d Cir.2004); *Mackey v. NFL,* 543 F.2d 606, 610–11 (8th Cir.1976). Thus, the defense requires a sophisticated understanding of the collectively bargained relationships the "law of the shop" as the Supreme Court has called—it not mere reference to the bare terms of the CBA.

The NFL as a joint venture of individual professional sports teams has collectively bargained a regime in which players bargain some terms and conditions of employ individually with their teams while other terms "are reserved to the NFL and the players union's selected representative to negotiate." *Clarett,* 369 F.3d at 139. Preserving this regime is important to the federal labor laws:

> Multiemployer bargaining itself is a well-established, important, pervasive method of collective bargaining, offering advantages to both management and labor.... The upshot is that the practice at issue here plays a significant role in a collective-bargaining process that itself constitutes an important part of the Nation's industrial relations system.

*Brown v. Pro Football, Inc.,* 518 U.S. 231, 240, 116 S.Ct. 2116, 135 L.Ed.2d 521 (1996).

Moreover, § 301 preemption is not the only issue of federal law lurking here. If the NFL is not properly considered the players' employer, the result will be a state law injunction against a non-employer that seriously undermines the collectively bargained competitive parity between NFL teams. This calls into play another facet of federal labor law preemption, "whether the exercise of plenary state authority to curtail or entirely prohibit self-help would frustrate effective implementation of the [Nation Labor Relations] Act's processes." *Lodge 76, IAM v. Wisc. Employment Re-*

*lations Comm'n,* 427 U.S. 132, 147–48, 96 S.Ct. 2548, 49 L.Ed.2d 396 (1976) (quotation omitted).

In these circumstances, even if the district court and the panel correctly concluded that these Minnesota statutory claims are not completely preempted by § 301, it was an abuse of discretion to decline jurisdiction over these claims, which were first asserted in federal court and raise important questions of federal law. Accordingly, I respectfully dissent from the denial of rehearing en banc.

COLLOTON, Circuit Judge, with whom RILEY and GRUENDER, Circuit Judges, join, and with whom LOKEN, Chief Judge, joins as to Part II, dissenting from denial of rehearing en banc.

The appeal of the National Football League, Dr. John Lombardo, and Adolpho Birch (collectively, "the NFL") argues that Minnesota state-law claims asserted by Kevin Williams and Pat Williams of the Minnesota Vikings are preempted by § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. In holding that the claims are not preempted, the panel reasoned that the NFL's defenses to liability under Minnesota law must not be considered in determining whether the state-law claims are "substantially dependent upon analysis" of a collective bargaining agreement, *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 220, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), and thus preempted by § 301. *Williams v. National Football League,* 582 F.3d 863, 879 n. 13 (8th Cir.2009). The panel observed that there is a "conflict in our precedent" regarding whether defenses to state-law claims should be considered in the preemption analysis, but concluded that it was " 'free to choose which line of cases to follow,' " *id.* (quoting *Meyer v. Schnucks Mkts., Inc.,* 163 F.3d 1048, 1050 (8th Cir.1998)), and elected to rule in this case that the employer's defenses are irrelevant.

## I.

This circuit has a peculiar approach to conflicting prior panel opinions. The prior panel rule emphatically holds that "[o]ne panel of this Court is not at liberty to disregard a precedent handed down by another panel," *Drake v. Scott,* 812 F.2d 395, 400 (8th Cir.1987), but if a second panel violates this rule and deviates from circuit precedent, then subsequent panels are free to follow suit, and to disregard the original circuit precedent in favor of the second decision. *See Williams,* 582 F.3d at 879 n. 13. This notion is often attributed to a decision in which the panel actually recognized that the first decision properly controls, as it should have controlled the second and subsequent panels. *Kostelec v. State Farm Fire and Cas. Co.,* 64 F.3d 1220, 1228 n. 8 (8th Cir.1995); *see also T.L. ex rel. Ingram v. United States,* 443 F.3d 956, 960 (8th Cir.2006) ("When we are confronted with conflicting circuit precedent, the better practice normally is to follow the earliest opinion, as it should have controlled the subsequent panels that created the conflict.") (citing *Kostelec,* 64 F.3d at 1228 n. 8). Later decisions, however, have simply asserted authority to choose either precedent, without regard to sequence, *e.g., Graham v. Contract Transp., Inc.,* 220 F.3d 910, 914 (8th Cir. 2000) (citing *Kostelec,* 64 F.3d at 1228 n. 8), thus making this court an outlier among the circuits. *See McMellon v. United States,* 387 F.3d 329, 333 (4th Cir. 2004) (holding that "as to conflicts between panel opinions, application of the basic rule that one panel cannot overrule another requires a panel to follow the earlier of the conflicting opinions," and collecting authority to demonstrate that "[m]ost of the other circuits agree").

If this court is going to follow such an unusual rule (a question that may deserve en banc treatment in and of itself), then

the court should be more receptive to petitions for rehearing en banc that seek resolution of conflicting circuit precedents. A principal purpose of en banc review is "to secure and maintain uniformity of the court's decisions." Fed. R.App. P. 35(b)(1)(A). If future panels are "free to choose" each time among conflicting rules of law, articulated by different prior panels, then the law is not predictable. One case may hold that state-law defenses are irrelevant to preemption analysis under § 301; the next case may hold that defenses are dispositive; the third case may revert to the rule of irrelevance, and so on. Parties cannot know in advance what rule will govern their case; district courts may waste valuable time by picking the wrong side of an intra-circuit conflict. The conflict cited by the petition for rehearing in this case involves an important question of federal law that should be settled, one way or the other.

## II.

This case also warrants further review because it appears, on the merits, that the panel has chosen to follow the wrong line of circuit precedent. As the petition for rehearing explains, our cases seem to have confused "ordinary preemption" with "complete preemption." The doctrine of complete preemption is a corollary to the "well-pleaded complaint" rule, both of which concern the proper *forum*—federal or state—in which a claim should be litigated. The well-pleaded complaint rule establishes that a case "may not be removed to federal court on the basis of a federal defense ... even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (emphasis omitted). The doctrine of complete preemption, however, provides that even a complaint that purports to plead only a state-law claim may be "completely preempted" by § 301, and thus removable to federal court, if *the claim pleaded by the plaintiff* is "founded directly on rights created by collective-bargaining agreements" or "substantially dependent on analysis of a collective-bargaining agreement." *Id.* at 394, 107 S.Ct. 2425 (internal quotation omitted). With respect to an employer's defenses to state-law claims, the Supreme Court in *Caterpillar* explained that *complete preemption* and *removal to federal court* may not be premised on "the presence of a federal question, even a § 301 question, in a defensive argument." *Id.* at 398, 107 S.Ct. 2425.

Ordinary preemption, by contrast, provides a substantive defense to a state law action on the basis of federal law, in whatever forum the case it is litigated. *See Firstcom, Inc. v. Qwest Corp.*, 555 F.3d 669, 677 n. 6 (8th Cir.2009); *Trustees of the Twin City Bricklayers Fringe Benefit Funds v. Superior Waterproofing, Inc.*, 450 F.3d 324, 329 n. 3 (8th Cir.2006). The NFL in this case invoked an ordinary preemption defense, based on § 301, against state-law claims that the plaintiffs filed in federal court. There was no dispute about complete preemption or removal jurisdiction.

The *Williams* panel suggested that its decision was "more faithful to Supreme Court precedent," 582 F.3d at 879 n. 13, but the *Caterpillar* decision on which it relied did not establish that an employer's defenses are irrelevant to whether a plaintiff's state-law claim is defeated by principles of ordinary preemption. To the contrary, while the employer in *Caterpillar* argued that its defense to the plaintiffs' state-law claim required interpretation of a collective-bargaining agreement, such that § 301 preempted the claim, the Court *intimated no view* on the merits of that preemption argument, leaving it to be ad-

dressed in the first instance by the state court in which the plaintiffs filed their claims. 482 U.S. at 398 n. 13, 107 S.Ct. 2425. Of course, if the employer's defense were irrelevant to ordinary preemption, as the *Williams* panel concluded, then there would have been no reason for the Court in *Caterpillar* to reserve judgment on the merits of the preemption defense. Similarly, in deciding whether a state-law retaliatory discharge claim was preempted by § 301 under principles of ordinary preemption, the Supreme Court in *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), considered whether the employer's defense to the state-law claim turned on the meaning of a provision of a collective-bargaining agreement. *Id.* at 407, 108 S.Ct. 1877. Again, if the employer's defenses were irrelevant to the ordinary preemption analysis, then there would have been no reason for the Court to consider them.

Our earliest cases concerning preemption and § 301 understood the Supreme Court to mean that defenses were relevant to ordinary preemption. *See Hanks v. General Motors Corp.,* 859 F.2d 67, 70 (8th Cir.1988) ("*Lingle* makes plain ... that the defenses, as well as claims, must be considered in determining whether resolution of the state law claims requires construing the collective bargaining agreement."); *see also Luecke v. Schnucks Mkts., Inc.,* 85 F.3d 356, 360 n. 4 (8th Cir.1996); *Johnson v. Anheuser Busch, Inc.,* 876 F.2d 620, 623 (8th Cir.1989). The later decision in *Meyer,* 163 F.3d 1048, which concerned complete preemption and removal jurisdiction, *id.* at 1050, declared that our precedents on § 301 preemption were "conflicting," but correctly explained that defenses to a state-law claim did not create a basis for LMRA preemption in a case involving complete preemption and removal jurisdiction. *Id.* at 1051 (citing *Humphrey v. Sequentia, Inc.,* 58 F.3d

1238, 1244 (8th Cir.1995)). A subsequent decision in *Bogan v. General Motors Corp.,* 500 F.3d 828 (8th Cir.2007), however, interpreted *Meyer* to mean that an employer's defenses are irrelevant to *ordinary* preemption analysis, and elected to follow this dubious interpretation of *Meyer* rather than the earlier precedents of *Hanks* and *Johnson. Id.* at 833. *Williams* followed *Bogan,* deepening the intra-circuit conflict.

\* \* \*

These inconsistent precedents, together with our cases allowing each future panel to follow the precedent that it prefers, leave the law of the circuit confused and uncertain on a significant issue of federal law. The procedural distinction between cases involving complete preemption and ordinary preemption, ably explained with reference to *Caterpillar* by the Seventh Circuit in *Smith v. Colgate–Palmolive Co.,* 943 F.2d 764, 769–71 (7th Cir.1991), suggests that the *Williams* panel incorrectly declared the NFL's defenses to the state-law claims irrelevant to the question of ordinary preemption under § 301. For these reasons, I would grant the NFL's petition for rehearing en banc.