James BERRETH, Plaintiff,

v.

KEYSTONE ELECTRICAL
MANUFACTURING COMPANY,
Defendant.

No. 4:03–CV–40228.

United States District Court,
S.D. Iowa,
Central Division.

July 1, 2003.

Elizabeth Flansburg, Des Moines, IA, for Plaintiff.

Ed Mansfield, Des Moines, IA, for Defendant.

## ORDER GRANTING PLAINTIFF'S MOTION TO REMAND [1]

GRITZNER, District Judge.

This matter comes before the Court on Plaintiff's Motion to Remand. A hearing

---

1. Plaintiff captioned this action as "Plaintiff's Resistance to Defendant's Notice of Removal" (Clerk's No. 4). The parties acknowledge that the correct posture of this action is a "Motion to Remand", which the Court treats accordingly.

on the Motion was held June 5, 2003. Appearing for Defendant Keystone Electrical ("Keystone") was attorney Ed Mansfield; appearing for Plaintiff James Berreth ("Berreth") was attorney Elizabeth Flansburg.

## FACTS

Plaintiff Berreth began working for Defendant Keystone in 1989. On February 7, 1998, while working as a paint booth foreman for Keystone, Berreth injured his right shoulder and arm. The injury required surgery and resulted in several work restrictions, including no lifting over fifty (50) pounds, no repetitive lifting of more than twenty-five (25) pounds, no repetitive gripping and grasping, no repetitive reaching above shoulder level, and no use of vibrating or impact tools.

Berreth alleges that on June 21, 2002, the steel shop supervisor told him to drill holes to mount name plates which required repetitive pushing and twisting of a vibrating tool at shoulder height. As a result of performing this task, Berreth alleges he re-injured his shoulder. Berreth's doctor diagnosed the injury as a shoulder sprain and ordered Berreth off work until July 1, 2002. On June 27, 2002, Berreth was seen by Dr. Berg, Keystone's company doctor, who also diagnosed the injury as a shoulder sprain. When Berreth saw Dr. Berg again on July 9, 2002, the sprain had resolved, and Berreth was released to work under permanent restrictions. Berreth gave the notes from both doctors to his supervisor. Keystone's owner, Fred Buie, terminated Berreth on July 16, 2002, asserting he could not accommodate Berreth's restrictions.

Berreth filed the present action in state court, alleging his termination was in violation of Iowa public policy. He claims he has damages including lost earnings, lost benefits, and expenses incurred seeking other employment, as well as pain and suffering. Berreth also argues punitive damages are appropriate because Keystone willfully and wantonly disregarded his rights.

In answering the petition, Keystone denies that Berreth's July 2002 permanent restrictions were the same as the restrictions he was given following the 1998 injury. Keystone further denies requiring Berreth to perform tasks in violation of his restrictions. Keystone also pleads several affirmative defenses, including Berreth's failure to mitigate his damages, that the claim is preempted by the Iowa Civil Rights Act, that the claim is preempted by the Labor Management Relations Act ("LMRA"), and that the claim is barred by Berreth's failure to timely exhaust his remedies under his Collective Bargaining Agreement ("CBA").

Keystone removed the case to federal court on April 24, 2003, pursuant to 28 U.S.C. § 1331, alleging Berreth's claim requires an analysis of his CBA and is, therefore, preempted by federal law.[2] Berreth filed the present motion, arguing this case should be remanded because his petition alleges a violation of Iowa public policy which does not mandate an analysis of the CBA; and, therefore, it is not preempted.

## DISCUSSION

 Title 28 U.S.C. § 1441 sets out conditions of removal and states in pertinent part:

---

**2.** Keystone states this Court also has original jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy is satisfied (Notice of Removal, ¶ 8). However, Berreth is an Iowa domiciliary, and Keystone admits in its Answer that it is an Iowa company. This Court *does not* have jurisdiction pursuant to § 1332 because *both* diversity *and* the amount in controversy must be met. 28 U.S.C. § 1332(a).

(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

28 U.S.C. § 1441(a), (b) (2000).

Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant. Absent diversity of citizenship, federal-question jurisdiction is required. The presence or absence of federal-question jurisdiction is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.

*Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (footnotes omitted) (citing *Gully v. First Nat'l Bank,* 299 U.S. 109, 112–113, 57 S.Ct. 96, 81 L.Ed. 70 (1936)).

██ "One corollary of the well-pleaded complaint rule developed in the case law, however, is that Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character."

*Metro. Life Ins. Co. v. Taylor,* 481 U.S. 58, 63–64, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). "On occasion, the Court has concluded that the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Caterpillar,* 482 U.S. at 393, 107 S.Ct. 2425 (quoting *Metro. Life Ins. Co.,* 481 U.S. at 63, 107 S.Ct. 1542).

In the present case, Keystone argues the claim for failure to accommodate under Iowa public policy requires analysis of Berreth's CBA, and, therefore, the claim is preempted by the LMRA. Berreth counters that the claim does not mandate an analysis of the CBA; rather, it only mandates an analysis of the facts leading up to Berreth's wrongful discharge, Iowa's public policy, and the Iowa Workers' Compensation Act. Berreth argues removal pursuant to § 1441 was improper as this Court does not have jurisdiction pursuant to § 1331.

Diversity of citizenship does not exist in the present case; therefore, removal is proper only if this case is founded upon a federal question which appears on the face of the complaint or a state law claim which is pre-empted by federal statute. *See id.* Since the LMRA is such a federal statute, claims arising under it are preempted.

Section 301 of the LMRA provides in pertinent part:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect of the amount in controversy or

without regard to the citizenship of the parties.

29 U.S.C. § 185(a) (2000).

■ However, "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 or other provisions of the federal labor law." *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 212, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). *See also Hawaiian Airlines, Inc. v. Norris,* 512 U.S. 246, 252, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994) ("Preemption of employment standards 'within the traditional police power of the State' 'should not be lightly inferred.'") (quoting *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 21, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987)). Furthermore, "an application of state law is pre-empted by § 301 of the Labor Management Relations Act of 1947 *only if* such application requires the interpretation of a collective-bargaining agreement." *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 413, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988) (emphasis added).

Clearly, a claim for breach of a collective bargaining agreement is preempted by § 301. *See id.,* 486 U.S. at 405–06, 108 S.Ct. 1877 ("[I]f the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law . . . is pre-empted and federal labor-law principles . . . must be employed to resolve the dispute."). However, the Supreme Court distinguished in *Lingle v. Norge Div. of Magic Chef, Inc.,* that discrimination and wrongful discharge claims are not *always* preempted by § 301; rather, preemption hinges on whether the resolution of the claim requires an interpretation of a collective bargaining agreement. *See id.*

In *Lingle,* the plaintiff notified her employer that she had been injured on the job and requested workers' compensation pursuant to the Illinois Workers' Compen-

sation Act. *Id.* at 401, 108 S.Ct. 1877. She was terminated six (6) days later for "filing a 'false workers' compensation claim.'" *Id.* (quoting *Lingle v. Norge Div. of Magic Chef, Inc.,* 823 F.2d 1031 (7th Cir.1987) (en banc), *rev'd,* 486 U.S. 399, 413, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988)). Her union representative filed a petition pursuant to her CBA which protected employees from discharge without "just cause". *Id.* The matter went to arbitration under the terms of the collective bargaining agreement. *Id.* at 401–02, 108 S.Ct. 1877.

While the arbitration was pending, Lingle filed suit in Illinois state court "alleging she had been discharged for exercising her rights under the Illinois workers' compensation laws." *Id.* at 402, 108 S.Ct. 1877. Defendant Norge removed the case to federal court based on diversity of citizenship and then moved to dismiss the claim on preemption grounds or, in the alternative, stay the proceeding pending the outcome of arbitration. *Id.* The district court and the Court of Appeals both found a "'claim for retaliatory discharge is 'inextricably intertwined' with the collective bargaining provision prohibiting wrongful discharge or discharge without just cause' and that allowing the state-law action to proceed would undermine the arbitration procedures set forth in the parties' contract." *Id.* (quoting *Lingle v. Norge Div. of Magic Chef, Inc.,* 618 F.Supp. 1448, 1449 (S.D.Ill.1985), *aff'd,* 823 F.2d 1031 (7th Cir.1987) (en banc), *rev'd,* 486 U.S. 399, 413, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988)).

The Supreme Court granted certiorari on the question of "whether an employee covered by a collective-bargaining agreement that provides her with a contractual remedy for discharge without just cause may enforce her state-law remedy for retaliatory discharge." *Id.* at 401, 108 S.Ct. 1877. The Court reasoned that although

"the state-law analysis might well involve attention to the same factual considerations as the contractual determination of whether Lingle was fired for just cause, such parallelism does not render the state-law analysis dependent upon the contractual analysis." *Id.* at 400, 108 S.Ct. 1877.

The Court found this was a purely factual inquiry which pertained to the "conduct of the employee and the conduct and motivation of the employer" and did not "turn on the meaning of any provisions of a collective bargaining agreement." *Id.* at 407, 108 S.Ct. 1877. The Court further surmised that " § 301 preemption merely ensures that federal law will be the basis for interpreting collective-bargaining agreements, and says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of such agreements." *Id.* at 409, 108 S.Ct. 1877. The Court further clarified that even when a collective bargaining agreement contains pay and benefit information which might be helpful in determining the damages to which a prevailing worker is entitled, the underlying state-law claim, not otherwise pre-empted, would stand. *Id.* The Court concluded, stating:

> Thus, as a general proposition, a state-law claim may depend for its resolution upon both the interpretation of a collective-bargaining agreement and a separate state-law analysis that does not turn on the agreement. In such a case, federal law would govern the interpretation of the agreement, but the separate state-law analysis would not be thereby pre-empted.

*Id.* at 413 n. 12, 108 S.Ct. 1877.

*Lingle* was a retaliatory discharge claim filed in Illinois state court. *Lingle,* 486 U.S. at 401, 108 S.Ct. 1877. The Illinois workers' compensation law, like Iowa's, does not provide a cause of action for retaliatory discharge; rather, retaliatory discharge is pleaded as a violation of public policy claim. *Compare Spearman v. Exxon Coal USA, Inc.,* 16 F.3d 722, 725–26 (7th Cir.1994) (finding "the Supreme Court of Illinois generalized its principle to bar retaliation that interfered with any substantial public policy of the state, thus liberating the tort from dependence on the workers' compensation laws"), *with Hanna v. Fleetguard, Inc.,* 900 F.Supp. 1110, (N.D.Iowa 1995) ("Because the Iowa legislature omitted this cause of action from its statutory scheme, the court concludes retaliatory discharge is not a civil action arising under Iowa's worker's compensation laws ...."), *and Springer v. Weeks and Leo Co., Inc.,* 429 N.W.2d 558, 560 (Iowa 1988) (finding it is a violation of Iowa public policy for an employer to terminate employees, including "at will" employees, for filing a workers' compensation claim). Therefore, in Illinois as in Iowa, claims for retaliation for pursuing rights under workers' compensation laws are not statutory claims; rather, they fall under state common law. *Id.*

The issue before the Court in the present case, is whether a claim for retaliatory discharge in violation of Iowa public policy is preempted by § 301. Keystone suggests the Eighth Circuit has resolved this issue in *Davis v. Johnson,* 21 F.3d 866 (8th Cir.1994). In *Davis,* plaintiff filed suit in federal court alleging handicap discrimination under the Missouri Human Rights Act because his employer refused to allow him to return to work after his back condition resolved. *Id.* at 867. Defendant moved to dismiss or in the alternative, for summary judgment arguing the claim was preempted by § 301 of the LMRA and, therefore, barred by the LMRA's statute of limitations.

The district court granted defendant's motion and the Eighth Circuit affirmed, reasoning that whether a violation of the

Missouri handicap discrimination statute had occurred required an interpretation of the CBA. *Id.* at 868. The court found "reasonable accommodation" within the meaning of the statute could only be ascertained by analyzing the seniority rights under the CBA. *Id.* The court reasoned that under Missouri Code of State Regulations, title 8, section 60–3.060(1)(G)(3)(D), one factor to consider in determining what constitutes a "reasonable accommodation" was " 'the authority to make the accommodation under the terms of any *bona fide* agreement.' " *Id.* Therefore, the Eighth Circuit concluded that to resolve plaintiff's claim *required* an examination of the seniority rights as set forth in the CBA.

Keystone argues *Davis* is on point in the present case. However, *Davis* required an analysis of the *Missouri statute* upon which the claim was brought. *Id.* at 868. Here, the question is whether *Iowa common law* recognizes a cause of action for retaliatory discharge for pursuing rights under the Iowa Workers' Compensation Act.

The Eighth Circuit dealt with a similar issue in *Graham v. Contract Transp., Inc.,* 220 F.3d 910, 912 (8th Cir.2000). Plaintiff Graham was required to submit to a random drug test and was fired after testing positive for methamphetamine. *Id.* at 911. However, Graham was allowed to resume his employment when he pointed out to the doctor that the drug test did not comport with U.S. Department of Transportation regulations. *Id.* The doctor ordered the test results expunged, but the employer determined the doctor did not have the authority to do so. *Id.* The employer reinstated the test results and again terminated Graham. *Id.*

Graham applied for and was awarded unemployment benefits and attempted to grieve his discharge pursuant to his CBA. *Id.* After his claim was denied, Graham filed a claim in state court alleging "he was terminated as the result of a drug test that did not comport with the regulations set forth by the U.S. Department of Transportation" as well as defamation per se and defamation per quod claims. *Id.* at 912. The district court granted summary judgment concluding all plaintiff's claims were preempted by § 301 of the LMRA, and, therefore, the claims were barred by the statute of limitations. *Id.* at 913.

Although the Eighth Circuit affirmed summary judgment on the wrongful termination claim, it did not affirm on preemption grounds. *Id.* The Eighth Circuit disagreed with the district court's reasoning that a claim of wrongful termination would necessarily be preempted. *Id.* The court stated, "we do not think that a finding that no recognized public policy is involved in a claim leads logically to a conclusion that that claim is preempted." *Id.* at 912. The court concluded that Iowa recognizes tortious discharge claims when the employee is terminated " 'in retaliation for performing an important and socially desirable act, exercising a statutory right, or refusing to commit an unlawful act.' " *Id.* (quoting *Borschel v. City of Perry,* 512 N.W.2d 565, 567 (Iowa 1994) (quoting 82 Am.Jur.2d *Wrongful Discharge* § 14, at 687 (1992))). However, the Eighth Circuit found that under the facts of the case, Graham's claim did not make such an allegation and could not be sustained under Iowa law. *Id.*

Pertinent to the case at bar is the Eighth Circuit's finding in *Graham* that a claim of wrongful discharge which can be maintained under Iowa law *is not* preempted by the LMRA. *Id.* In fact, the court clarified that preemption is not inevitable simply because a claim cannot be maintained on the state law theory alleged in the complaint. *Id.* at 912. As discussed, Iowa recognizes a cause of action for wrongful discharge in violation of public policy for pursuing rights under the

Iowa Workers' Compensation Act, *see Springer,* 429 N.W.2d at 560.

 Keystone argues its defenses to Berreth's claim require a reading of Article II, Sections 4 and 7 of the CBA. Section 4 explains an employee's *right* to a hearing, and Section 7 lists various job descriptions. At the hearing, counsel for Keystone argued that determining whether Keystone could have reasonably accommodated Berreth's restrictions and the seniority issues involved in reassigning Berreth to a new position required reference to these CBA provisions. However, no basis has been provided to explain how *referring* to the CBA requires the Court to *interpret* the CBA. The Court does not identify an issue that requires interpretation of the CBA. As the *Lingle* court found, reference to the CBA does not preempt the claim. *Lingle,* 486 U.S. at 406, 108 S.Ct. 1877;[3] *see also Ramirez v. Fox Television Station, Inc.,* 998 F.2d 743, 749 (9th Cir.1993) ("Although the line between reference to and interpretation of an agreement may be somewhat hazy, merely referring to an agreement does not threaten the goal that prompted preemption—the desire for uniform interpretation of labor contract terms."); *Brown v. Holiday Stationstores, Inc.,* 723 F.Supp. 396, (D.Minn.1989) (reasoning plaintiff's claim of handicap discrimination under Minnesota law was not preempted by the LMRA because the statute clearly defined reasonable accommodation and did not require analysis of the CBA which did not contain a provision protecting the rights of handicapped workers).

Keystone's argument that its defenses require interpretation of the CBA also fails. In *Luecke v. Schnucks Markets, Inc.,* the Eighth Circuit found a state law defamation claim against an employer was not preempted by the LMRA simply because the CBA may be referred to by the defendant in asserting its affirmative defenses. *Luecke v. Schnucks Mkts., Inc.,* 85 F.3d 356, 360–62 (8th Cir.1996). The court reasoned that "while the provisions of the collective-bargaining agreement will perhaps be 'consulted,' they need not be interpreted in order to resolve any qualified privilege defense that Schnucks may raise in the state defamation proceeding." *Id.* at 362 (distinguishing *Johnson v. Anheuser Busch, Inc.,* 876 F.2d 620 (8th Cir. 1989), in which the court found a state law defamation claim required interpretation of the misconduct rules contained in the CBA because the alleged false statement resulted in the plaintiff's termination for violation of those rules).

**3.** In *Livadas v. Bradshaw,* 512 U.S. 107, 123, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994), the Supreme Court reiterated the admonition issued in *Allis–Chalmers Corp. v. Lueck* and *Lingle,* stating:

we underscored the point that § 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law, and we stressed that it is the legal character of a claim, as "independent" of rights under the collective-bargaining agreement, *Lueck, supra,* 471 U.S., at 213, 105 S.Ct., at 1912 (and not whether a grievance arising from "precisely the same set of facts" could be pursued, *Lingle, supra,* 486 U.S., at 410, 108 S.Ct., at 1883),

that decides whether a state cause of action may go forward. *Finally, we were clear that when the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished,* see *Lingle, supra,* at 413, n. 12, 108 S.Ct., at 1885, n. 12 ("A collective-bargaining agreement may, of course, contain information such as rate of pay ... that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled") (footnotes omitted) (emphasis added).

## CONCLUSION

On this record, the Court must find neither Berreth's claim of wrongful discharge nor Keystone's affirmative defenses require *interpretation* of the CBA; therefore, the claim is not preempted by the LMRA. The Court lacks both federal question and diversity of citizenship jurisdiction. Plaintiff's Motion to Remand this case to state court is **granted.**

**IT IS SO ORDERED.**